**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Vernon TAGGATZ,**
**Defendant-Appellant.**

**No. 86–1824.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1986.

Decided Oct. 7, 1987.

Franklyn M. Gimbel, Gimbel, Gimbel & Reilly, Milwaukee, Wis., for defendant-appellant.

Richard D. Humphrey, Asst. U.S. Atty. (John R. Byrnes, U.S. Atty.), Madison, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, FLAUM, Circuit Judge, and REYNOLDS, Senior District Judge.*

---

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

REYNOLDS, Senior District Judge.

Vernon Taggatz appeals from the judgment of conviction that he knowingly and unlawfully executed a scheme to defraud federally insured financial institutions, in violation of 18 U.S.C. § 1344. After being found guilty by a jury, he was sentenced to five years imprisonment and was ordered to pay restitution to the Nekoosa–Port Savings & Loan in the amount of $57,000. Taggatz was also ordered to pay a $50 criminal assessment penalty.

On appeal, Taggatz contends first, that evidence of a prior incident involving First Wisconsin National Bank was improperly admitted under Rule 404(b) of the Federal Rules of Evidence. Second, Taggatz contends that the verdict improperly allowed the jury to convict the defendant of both the attempt and execution of the offense, as charged in the indictment, despite the court's instructions to the jury, that before it could convict Taggatz, it must unanimously agree either that the defendant executed a scheme to defraud or that he attempted to do so. Finally, Taggatz argues that the sentence imposed by the trial judge is excessive because it goes beyond the guidelines imposed by 18 U.S.C. § 3553. Finding that (1) the trial court properly admitted evidence of the First Wisconsin National Bank incident, (2) the jury properly found the defendant guilty of the offense charged, and (3) the trial court acted within its discretion in imposing sentence, we affirm Taggatz's conviction and sentence.

**I**

Taggatz is an insurance salesman who also has numerous real estate holdings. He operates out of his own office in Port Edwards, Wisconsin. On December 12, 1985, Taggatz was indicted by a federal grand jury on one count of knowingly and unlawfully executing and attempting to execute a scheme to defraud federally in-

sured financial institutions in the Western District of Wisconsin. The indictment charged that from on or about February 1, 1985, to on or about March 4, 1985, Taggatz executed and attempted to execute a scheme to defraud the Nekoosa–Port Edwards Savings & Loan Association and the Wood County National Bank. Specifically, the indictment alleged that the defendant drew checks on his account at Wood County National Bank in amounts in excess of the amount on deposit in that account and deposited them to his account at Nekoosa–Port Edwards Savings & Loan Association. The indictment further alleged that the defendant drew checks on his account at Nekoosa–Port Edwards Savings & Loan Association in amounts in excess of the amount on deposit in such account and deposited those checks to his accounts at the Nekoosa–Port Edwards State Bank and also to his account at Wood County National Bank.

At trial, the government proved that Taggatz executed and attempted to execute a scheme to defraud the Nekoosa–Port Edwards Savings & Loan and Wood County National Bank as charged in the indictment. The evidence showed that Taggatz was floating worthless checks for thousands of dollars between these institutions and, at the same time, was siphoning off the proceeds generated by the check float to his personal account at the Nekoosa–Port Edwards State Bank.

The evidence showed that Taggatz created a fictitious ledger balance at the Nekoosa–Port Edwards Savings & Loan by drawing checks on his account at Wood County National Bank and depositing them to his account at the Nekoosa–Port Edwards Savings & Loan. Taggatz then drew checks from the fictitious balance at the Nekoosa–Port Edwards Savings & Loan and deposited them to his account at the Nekoosa–Port Edwards State Bank. Finally, to cover the worthless checks drawn on his account at Wood County Bank, Taggatz drew additional checks against his fictitious balance at the Nekoosa–Port Edwards Savings & Loan and deposited them to his account at Wood County National Bank.

This cycle of transactions continued from early February, 1985 until early March, 1985 when Wood County National Bank refused to accept any more deposits from the defendant's account at Nekoosa–Port Edwards Savings & Loan and refused to honor any more checks drawn on the defendant's account at the Wood County National Bank. Wood County National Bank discovered the kite and was able to avoid any significant loss by refusing to accept any more deposits. The Nekoosa–Port Edwards Savings & Loan Association, on the other hand, suffered a loss of more than $145,000.

All of the checks in question were either drawn personally by Taggatz or under his direction and control by his secretary, Theresa Schoenborn. Evidence introduced at trial showed that during the month of February, 1985 alone, the combined total of deposited to Taggatz's account at Wood County National Bank and Nekoosa–Port Edwards Savings & Loan amounted to approximately $1,222,000. Of this amount, approximately $1,180,000 was due to checks drawn on one such account and deposited to the other.

During the trial the government introduced evidence, pursuant to Rule 404(b), Federal Rules of Evidence, showing that immediately prior to the check-kiting scheme charged in the indictment, Taggatz operated a similar scheme involving the First Wisconsin National Bank of Milwaukee, the Bank of Plover and the Nekoosa–Port Edwards State Bank.

Ms. Janice Shulman, an employee of First Wisconsin National Bank, testified that in late November, 1984 she and other officers of the bank met with Taggatz for the purpose of discussing the activity which had been occurring in Taggatz's account in October and November of 1984. Janice Shulman testified that Taggatz admitted that he personally wrote many of the checks and that in some instances they were written by his secretary Theresa Schoenborn with his knowledge and authority. Janice Shulman testified that during the meeting she advised Taggatz that he was creating a "float" and that he was

using the bank's money to "beef up the deposits in the account." Shulman further testified that she advised Taggatz that "[W]hat he was doing was check kiting and that that was illegal, and First Wisconsin could not permit activity of that kind and we would have to close the account." The evidence showed that four days after Taggatz received this warning from First Wisconsin National Bank, he opened a new account at the Nekoosa–Port Edwards Savings & Loan and began the check-kiting operation for which he was eventually charged.

Before the trial commenced in this matter, defense counsel moved to suppress any evidence of any transactions involving First Wisconsin National Bank in November of 1984. The trial court denied the motion. The government indicated that the evidence regarding First Wisconsin National Bank would be used to show the defendant's intent, plan, knowledge and absence of mistake or accident.

During the course of the trial, there were discussions among the court and both counsel regarding the appropriate wording of the indictment and the verdict. The indictment charged that the defendant "executed and attempted to execute a scheme to defraud ..." Ultimately, the jury was instructed as follows:

> The government has met its burden if it convinces you beyond a reasonable doubt that the defendant executed or attempted to execute a scheme to defraud. However, you must unanimously agree that the defendant either executed such a scheme or attempted to do so.

The verdict form submitted to the jury stated, "[W]e the jury in the above entitled cause, find the defendant Vernon Taggatz Guilty or Not Guilty of the offense charged in the Indictment returned against him." Subsequently, the jury returned a verdict of guilty.

## II

■ Taggatz asserts that the trial court abused its discretion in admitting evidence of Taggatz's similar check-kiting scheme at the First Wisconsin National Bank, pursuant to Rule 404(b), Federal Rules of Evidence.[1] First, Taggatz contends the trial court did not identify the evidentiary hypothesis under Rule 404(b) by which the consequential act may be inferred from the evidence of the First Wisconsin incident. Second, Taggatz argues that the government failed to meet its burden in showing that the proffered evidence was relevant. Third, Taggatz asserts that the trial court improperly determined the probative value of the evidence outweighed the danger of unfair prejudice.

The admission of evidence under Rule 404(b) is within the sound discretion of the trial court. The standard of review applicable to a trial court's ruling on the admission or exclusion of evidence is well settled. "A trial court's evidentiary rulings will not be reversed on appeal absent a clear showing of abuse of discretion." *United States v. Harris*, 761 F.2d 394, 398 (7th Cir.1985). *See also, United States v. Byrd*, 771 F.2d 215, 219 (7th Cir.1985).

■ This circuit has applied a four-part test for determining whether evidence of "similar acts" should be admitted. Evidence of "similar acts" is to be admitted if:

> (1) The evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984); *United*

---

1. Rule 404(b) states:
   404(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
   Rule 404(b), Fed.R.Evid.

*States v. Tuchow,* 768 F.2d 855, 862 (7th Cir.1985).

The first requirement is met because the similar act evidence was not admitted to establish the defendant's propensity to commit the crime charged in the indictment, but rather to show the defendant's intent, plan, knowledge and absence of mistake or accident. Taggatz's contention that the trial court did not properly identify the evidentiary hypothesis for which the similar act was admitted under Rule 404(b) is unpersuasive. The trial judge conducted a conference prior to jury selection and, at that time, the judge explicitly ruled that the evidence would be admitted to show Taggatz's intent, plan, knowledge, and absence of mistake or accident. Furthermore, at that time, a jury instruction was tailored to inform the jury that the similar act evidence should be considered only on the question of the defendant's intent, plan, knowledge, and absence of mistake or accident. Taggatz did not object to the instruction's wording. The trial court then read the cautionary instruction to the jury at the close of trial.

The trial court acted with the sensitivity and caution that consideration of similar acts evidence requires. The court specifically considered the proffered evidence before the jury selection and outside of the presence of prospective jurors in the case. The trial judge afforded the defendant and the government a full opportunity to make their respective arguments concerning the admissibility of the evidence before denying Taggatz's motion to suppress. The instruction comports with the language of Rule 404(b) which allows evidence of similar acts to be admitted for various permissible purposes, but not to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with the prior similar act. It is clear that the trial court allowed the evidence to be admitted to show Taggatz's intent and knowledge.

The second requirement of the test for the admissibility of evidence of prior similar acts is met because the evidence is similar enough and close enough in time to be relevant to the matter in issue. The matter in issue was Taggatz's intent and knowledge. The evidence was directly similar in nature to the evidence of the crime charged in the indictment. The defendant was charged with defrauding financial institutions. The evidence of the crime showed that he accomplished this by way of a check-kiting scheme involving the Nekoosa–Port Edwards Savings & Loan, Wood County National Bank and the Nekoosa–Port Edwards State Bank. The similar act evidence showed a check-kiting scheme engaged in by the defendant through his accounts at the First Wisconsin National Bank, the Bank of Plover and the Nekoosa–Port Edwards State Bank. Although the combination of banks was different; the scheme itself, as a practical matter, was nearly identical. Additionally, the incident involving First Wisconsin National Bank immediately preceded the kite-checking scheme with which Taggatz was charged. Under the circumstances, the prior act involving the First Wisconsin National Bank was highly relevant to the knowledge and intent of Taggatz because the similar act was nearly identical in nature and followed closely in time to the crime charged in the indictment.

The third requirement that the evidence be clear and convincing was met. The testimony of Janice Shulman and the exhibits she introduced showed that, during October and November of 1984, Taggatz caused numerous checks to be deposited to his account at First Wisconsin National Bank which were returned unpaid. Ms. Shulman testified that the checks that were returned had been drawn on the defendant's accounts at the Bank of Plover and the Nekoosa–Port Edwards Bank. She further testified that Taggatz had drawn numerous checks on his account at the First Wisconsin National Bank payable to the Bank of Plover and the Nekoosa–Port Edwards State Bank, and that those checks had been drawn on uncollected funds.

Ms. Shulman testified that when she and other bank officers confronted Taggatz with this activity during a meeting at the bank on November 30, 1984, Taggatz ad-

mitted that he personally drew many of the checks and that some were drawn by his secretary with his knowledge and authority. Ms. Shulman also testified that she told Taggatz that he was creating a check float and that he was using the bank's money to "beef up" the deposits in his account. Ms. Shulman further testified that she told Taggatz "that what he was doing was check-kiting and that that was illegal, and First Wisconsin could not permit activity of that kind and we would have to close the account."

The meeting between Taggatz and the officers of First Wisconsin National Bank took place a few days before Taggatz opened his account at the Nekoosa–Port Edwards Savings & Loan where he then began executing the check-kiting scheme charged in the indictment. The testimony of Ms. Shulman and the exhibits introduced through her put Taggatz on notice that his activities were illegal. The evidence admitted was clear and convincing and directly addressed the issue of Taggatz's intent and knowledge, while negating the converse issues of mistake or accident.

The fourth and final requirement for admitting evidence of a similar act was met because the probative value of the evidence substantially outweighed the danger of unfair prejudice. "This determination, involving a Fed.R.Evid. Rule 403 determination balancing the prejudice against the evidence's relevance, is reversible only if the district court abused its discretion." (Citations omitted.) *United States v. Tuchow,* 768 F.2d 855, 862 (7th Cir.1985).

Taggatz relies on *United States v. Hernandez–Miranda,* 601 F.2d 1104 (9th Cir. 1979) for the proposition that where the government fails to demonstrate the relevance of the evidence, the court is unable to balance the prejudicial effect against the probative value. Here again, we reiterate our conviction that the trial court acted with sensitivity and caution when considering the admission of similar acts evidence. Specifically, the trial court in a conference with counsel prior to jury selection considered the arguments of each side as to the Rule 404(b) evidence. Upon the conclu-

sion of the arguments the court stated, "[t]he Court does believe, however, that from the statement of Mr. Humphrey, that it falls within the parameters of 404. It appears to be certainly directly in time, only two or three months before the alleged offense. It appears to be the same type of act which is alleged in the indictment, as to the depositing of the checks in the accounts and the cross deposits. And the only concern the Court has is that there may be some confusion. There always are in these bad acts, but that is under 403 and I would hope that if that does occur the appropriate objection would be made." The government did demonstrate the relevance of the evidence. There was a clear and logical connection between the First Wisconsin National Bank transactions and the case being tried. The probative value of the evidence was high since it went directly to the issue of the defendant's intent and knowledge.

Taggatz's argument that the similar act evidence concerning the First Wisconsin National Bank did not constitute a crime when the check-kiting activity occurred because 18 U.S.C. § 1344 was not enacted until October 12, 1984; and therefore, the admission of this evidence was an abuse of trial court discretion requiring reversal is not based on any legal authority. Although some of Taggatz's similar activities involving the First Wisconsin National Bank may have predated the enactment of 18 U.S.C. § 1344, the evidence admitted at trial of Taggatz's activities postdated the enactment of 18 U.S.C. § 1344. In any respect, assuming Taggatz's activity involving First Wisconsin was not criminal under state law or other federal statutes, which is unlikely, Rule 404(b) does not require that a similar act be a crime at the time the act occurs nor is there any caselaw imposing such a requirement.

### III

■ Taggatz's second major contention is that the jury may have improperly convicted the defendant of both executing and attempting to execute a scheme to defraud federally insured financial institutions.

The indictment charged that Taggatz executed and attempted to execute a scheme to defraud banks. The jury, however, was instructed immediately after the indictment was read to them that it could find Taggatz guilty if it unanimously agreed that Taggatz executed the scheme or that he attempted to execute the scheme. The court specifically instructed the jury that, "the government has met its burden if it convinces you beyond a reasonable doubt that the defendant executed or attempted to execute a scheme to defraud. However, you must unanimously agree that the defendant either executed such a scheme or attempted to do so."

Taggatz sought to have deleted from the indictment all references to an attempt to execute a scheme to defraud on the basis that there was no evidence in the record of an attempt to execute the scheme. Taggatz, however, never objected to the wording of the verdict form at trial. Taggatz argues that the jury's verdict finding Taggatz guilty of the offense charged in the indictment therefore could have resulted from some jurors believing Taggatz attempted to execute the scheme and some believing he did in fact execute the scheme.

Taggatz's argument that the jury may not have reached a unanimous verdict is circular and speculative. In every criminal case there exists the possibility that the jury may not have followed the court's instruction. This does not constitute grounds for reversal. As the Supreme Court stated in *Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954), "Our theory of trial relies upon the ability of a jury to follow instructions." On review we must assume the jury followed the plain instructions given wherein the court instructed "... you must unanimously agree the defendant either executed such a scheme or attempted to do so."

Moreover, the trial court's handling of the conjunctive language in the indictment by way of a jury instruction is supported by holdings of this circuit. In *United States v. Zeidman,* 540 F.2d 314 (7th Cir. 1976), the defendants were charged with several counts of mail fraud. It was alleged in each count that as part of their scheme they defrauded both a debtor and a creditor. The trial court in *Zeidman,* as in this case, handled the conjunctive language with an instruction to the jury that they must not return a guilty verdict unless they all agreed that the defendants had devised a scheme to defraud at least the creditor or the debtor. In this case, the instructions reasonably interpreted require that the jury unanimously agree that Taggatz was guilty of either the execution of the scheme or the attempt to do so.

In *United States v. Berardi,* 675 F.2d 894 (7th Cir.1982), the defendant was charged in one count with several acts of obstructing justice. The court instructed the jury that in order to convict the defendant they must be "unanimous in ... finding the defendant did at least one of the acts charged ..."

Taggatz maintains that the verdict is defective because it improperly refers to the conjunctive language of the indictment. The instructions and verdict in this case must be considered together. It must be assumed that the jury followed the instructions given. Accordingly, the one-is-enough instruction given by the trial court assures that the prosecution established beyond a reasonable doubt and the jury unanimously found that the defendant violated 18 U.S.C. § 1344 by either (1) attempting to execute a scheme to defraud banks or (2) executing a scheme to defraud banks.

Taggatz concedes that when the indictment alleges alternative means of committing the same offense, as is the case here, it is deemed proper to allege those alternative means in the conjunctive. *United States v. Lemire,* 720 F.2d 1327, 1345 (D.C. Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984). There was sufficient evidence to convict Taggatz of attempt as well as execution of a scheme to defraud financial institutions. Consequently, because the indictment uses the conjunctive to allege alternative means of committing the same offense, and the jury instructions appropriately required unanimity for each alternative, the general verdict

providing that Taggatz could be found guilty or not guilty of the offense charged in the indictment did not deprive Taggatz of a unanimous verdict.

## IV

Taggatz's final argument contends that the trial court abused its discretion by imposing the maximum sentence contrary to the legislative guidelines for sentencing. Taggatz complains that his sentence is the maximum allowed by law, and that such a sentence is an abuse of discretion because it is contrary to the sentencing guidelines established by Congress pending the development of more explicit guidelines by the United States Sentencing Commission. Taggatz relies on 18 U.S.C. § 3553 for the proposition that the sentencing court is required to consider the nature and circumstances of the offense, the history of the defendant, whether defendant is a threat to society and sentences imposed upon defendants with similar records who are found guilty of similar conduct.

A sentence within the statutory maximum provided by Congress is only subject to review on appeal for manifest abuse of discretion. *United States v. Carter*, 720 F.2d 941, 951 (7th Cir.1983). The trial judge observed Taggatz throughout the trial, heard the testimony of witnesses, reviewed and analyzed Taggatz's presentence report, and listened to defense counsel's arguments at the sentencing proceeding. Upon review of the sentencing transcript, it is evident that the trial judge carefully considered all relevant factors before imposing the maximum sentence. The Sentencing Reform Act of 1984 attempts to promote uniformity in sentencing by requiring judges to defer to the guidelines established by the U.S. Sentencing Commission. *See United States v. Sato*, 814 F.2d 449 (7th Cir.1987). Nonetheless, the 1984 Act was not effective at the time of Taggatz's sentencing. Taggatz must advance his arguments in general terms of abuse of discretion. Nothing on record suggests the trial judge abused or failed to exercise his discretion.

For the above reasons, the judgment of conviction and sentence of Vernon Taggatz is affirmed.