**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dwight E. JACKSON,
Defendant–Appellant.**

**No. 87–1301.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1987.

Decided Dec. 14, 1987.

As Amended Jan. 19, 1988.

Gregory J. Schlesinger, Chicago, Ill., for appellant.

Scott T. Meneloff, Asst. U.S. Atty., Chicago, Ill., for appellee.

Before POSNER, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Thirty minutes after being released from prison, to which he had been sent on conviction of two bank robberies, Dwight Jackson robbed another bank. He was let out as part of a "work release program" and returned to his old line of work. Told to get a job, he decided to do a bank job. A passer-by saw a suspicious person flee the bank and noted the license plate of the car. The police found that the car was registered to Mitty Sturdivant of Chicago. Police and FBI agents headed for Sturdivant's home; while they were there, the car pulled up. Out got Jackson, Sturdivant's son. The agents arrested Jackson and searched the car, finding a loaded gun and clothing worn during the robbery. Jackson was back in prison before the sun set on the day of his release. His principal sentence—life in prison without possibility of parole—came under a statute forbidding possession of weapons by career criminals, 18 U.S.C.App. § 1202 (repealed 1986). The citation of the statute discloses Jackson's principal argument.

Section 1202, as amended during the overhaul of the criminal code in 1984, provided that anyone "who ... possesses ... any firearm and who has three previous [felony] convictions for robbery or burglary, or both, ... shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person ..., and such person shall not be eligible for parole with respect to the sentence imposed under this subsection." Jackson, who had been convicted of four armed bank robberies and one armed robbery, brandished his revolver and robbed the Continental Bank of Oakbrook Terrace, Illinois, on May 30, 1986, while this statute was in force. It was in force only because the repealer, § 104(b) of the Firearms Owner's Protection Act, 100 Stat. 459, signed by the President on May 19, 1986, was deferred for 180 days by § 110(a) of the same act. Section 1202 therefore survived until November 1986. Jackson was indicted on July 25, 1986, but not sentenced until February 18, 1987, which, he says, was too late, because by then § 1202 had expired.

Jackson does not reckon with the General Savings Statute, 1 U.S.C. § 109, which provides in part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

The 1986 statute does not "expressly" absolve those who violated § 1202. As a result, an act prior to the effective date of the repeal supports a conviction thereafter. *Pipefitters v. United States*, 407 U.S. 385, 432–42, 92 S.Ct. 2247, 2272–77, 33 L.Ed.2d 11 (1972). If the 1986 act established a legal *right* of felons to own firearms, we would have a difficult case, for the reasons given in *Hamm v. City of Rock Hill*, 379

U.S. 306, 314–17, 85 S.Ct. 384, 390–92, 13 L.Ed.2d 300 (1964). But Congress did not substitute a legal right for what had been a legal wrong; it simply altered the elements of the offense. New 18 U.S.C. §§ 922(g) and 924(e)(1) continue the prohibition and the 15–year minimum term, if each of the three prior convictions was of "a violent felony or a serious drug offense". Armed robbery meets the definition of "violent felony" in § 924(e)(2)(B)(i). The prohibition applicable to Jackson's conduct has been in force continuously, and the General Savings Statute prevents him from receiving a windfall just because he was convicted and sentenced more than 180 days after May 19, 1986.

■ Jackson received a life sentence under § 1202, which forbade release on parole. He concedes that the statute permitted the imposition of any term of years but insists that it allowed only determinate numbers of years and therefore did not authorize a life sentence. When parole is forbidden, however, a judge may use either method to reach the same result. Jackson was 35 when he committed the crime. Unless there are startling advances in geriatric medicine, a long term of imprisonment (say, 60 years) and life are the same sentence; it would be silly to read the statute as authorizing one but not the other. Other statutes without stated maxima have been treated as authorizing life sentences. E.g., *Bates v. Johnson*, 111 F.2d 966 (9th Cir.1940) (Lindberg Act, which does not have a maximum, authorizes life for kidnapping); *United States v. Bridges*, 760 F.2d 151, 153 (7th Cir.1985) (21 U.S.C. § 841(b)(1)(A), dealing with special parole, "does not expressly specify the maximum parole term ... [and therefore] can only be read as authorizing a life time maximum"). See *Walberg v. United States*, 763 F.2d 143, 148–49 (2d Cir.1985) (collecting similar cases). A minimum term of 15 years without possibility of parole is exceptionally stiff; a section containing such a minimum implies a high maximum too.

■ The imposition of life in prison on Jackson was permissible. The selection of a sentence within the statutory range is essentially free of appellate review. *Dorszynski v. United States*, 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974); *United States v. Taggatz*, 831 F.2d 1355, 1362 (7th Cir.1987); *United States v. Sato*, 814 F.2d 449, 451–52 (7th Cir.1987). Armed bank robbery on the day of release —following earlier armed robbery convictions back to 1973—marked Jackson as a career criminal. Specific deterrence had failed. The court was entitled to consider general deterrence and incapacitation. Although life without possibility of parole is the upper end of the scale of sanctions (short of capital punishment), the statute reflects a judgment that career criminals who persist in possessing weapons should be dealt with most severely. The Sentencing Commission has determined that a criminal such as Jackson should receive an exceptionally long sentence—27 years without possibility of parole at the minimum, and life without possibility of parole at the maximum. Appellate review of sentences accompanies the Guidelines; we are neither authorized nor inclined to upset this pre-Guideline sentence given the determination of both Congress and Sentencing Commission to take a dim view of Jackson's conduct. If this sentence is unduly harsh, the holder of the clemency power may supply a remedy.

The parties have not addressed how the Guidelines would apply to this combination of offenses in the future, but the case exposes an ambiguity that the Sentencing Commission may wish to consider. As a repeat offender, Jackson would fall under § 4B1.1 of the Guidelines. Those who commit violent felonies (bank robbery is a violent felony under § 4B1.2 Note 1) and have two prior convictions of violent felonies (as Jackson has) receive an offense level of 34 if the statutory maximum is 20 years or more, an offense level of 37 if the statutory maximum is life. A level of 37 yields a guideline range of 360 months to life— without possibility of parole, which has been abolished for sentences under the Guidelines. A level of 34 yields a sentence

range of 262–327 months.* Section 1202 had a maximum of life; armed bank robbery under 18 U.S.C. § 2113(d) carries a maximum of 25 years. So the effect of § 4B1.1 seems to depend on whether the "offense statutory maximum" under § 4B1.1 refers to the maximum lawful sentence for the crime of violence, or the maximum for any of the crimes that would be part of a single "group" under § 3D1.2 of the Guidelines.

Neither text nor commentary in the Guidelines addresses this point, probably for two reasons. First, the maximum penalty applicable to a group of related offenses usually attaches to the crime of violence. Second, the Guidelines treat illegal possession of a weapon as less serious than bank robbery, compare § 2B3.1 with § 2K2.1—which it is except when there are prior felony convictions and § 1202 or its successor § 924(e) therefore applies. This means that the Guidelines regularly treat robbery as the base offense in any grouping of offenses under § 3D, making the possession charge unimportant and postponing to § 4B1.1 the effect of prior offenses. The judge who turns to § 4B1.1 to deal with the possession-based multiple offense crime then finds that the Guidelines assume that the violent crime rather than the possessory crime should be the basis of the enhancement, while Congress specified the use of the weapons charge for that purpose. To put this differently, none of the provisions of the Guidelines addresses § 1202 or § 924(e); neither is listed in the "Statutory Index" of offenses covered by the Guidelines. There is a possibility, of course, that the weapons offense under § 1202 and § 924(e) is a "crime of violence" under § 4B1.2 Note 1 because "by its nature [it] involves a substantial risk that physical force against the person or property of another may be used"—even though § 1202 and § 924(e) may be violated by possession divorced from use of the gun. We express no view on these questions, except to hope that the

Commission will resolve them before they precipitate a good deal of litigation—which they will, because the sentence ranges for level 34 and level 37 offenses do not even overlap.

■ Jackson's last argument is that the prosecution showed photo spreads to witnesses but did not conduct a lineup. None is necessary. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Love v. Young,* 781 F.2d 1307, 1310 n. 1 (7th Cir.1986). *Dooley v. Duckworth,* 832 F.2d 445 (7th Cir.1987), reviews the cases on the propriety of the techniques used here; a further review is unnecessary. None of the techniques used here so created a chance of "irreparable" misidentification, see *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), that the jury was unable to make a reliable decision about Jackson's guilt.

AFFIRMED

POSNER, Circuit Judge, concurring.

I join the opinion and judgment of the court; but I think the sentence Jackson received is too harsh and I think it appropriate to point this out even though he presents no ground on which we are authorized to set aside an excessively severe sentence.

Jackson is unquestionably a dangerous and hardened criminal. He has been convicted of armed robbery four times (three were bank robberies—all of the same bank!); in each robbery he was carrying a loaded gun. I do not mean to denigrate the gravity of his offenses by pointing out that he has never inflicted a physical injury; but that fact is relevant to deciding whether the sheer enormity of his conduct warrants imprisonment for the rest of his life as a matter of retributive justice. It does not. Few murderers, traitors, or rapists are punished so severely—a good example being the life sentences, with parole eligi-

---

* In either case, the court must add five years for a person such as Jackson who also has been convicted under 18 U.S.C. § 924(c), which requires a consecutive sentence of five years' imprisonment for using a gun in the course of a felony. See also § 2K2.4 and § 3D1.2 Note 1 of the Guidelines, on the effect of § 924(c).

bility after 10 years, imposed on two federal prisoners for first-degree murder, each having previously murdered three people, in *United States v. Fountain*, 768 F.2d 790, 799–800 (7th Cir.1985). The grounds for the sentence in this case must be sought elsewhere.

One ground, the one articulated by the district judge, is the need to prevent Jackson from committing further crimes. There is little doubt that if he were released tomorrow he would commit a bank robbery, perhaps on the same day. But it is extremely unlikely that if he were released 25 or 30 years from now (he is 35 years old) he would resume his career as a bank robber. We know that criminal careers taper off with age, although with the aging of the population and the improvements in the health of the aged the fraction of crimes committed by the elderly is rising. See Newman et al., Elderly Criminals, ch. 2 (1984). Crimes that involve a risk of physical injury to the criminal are especially a young man's game. In 1986 more than 62 percent of all persons arrested for robbery (any sort of robbery—I can find no breakdown by type of robbery) were below the age of 25, and only 3.4 percent were 60 years old or older. FBI, Uniform Crime Reports 20, 174–75, 180 (1986). The only age group that accounted for a smaller percentage of arrests for robbery than persons 60 to 64, or 65 and older, were children below the age of 10—and, remarkably, there were almost as many arrests in that group as there were of persons in the 65 and over group (199 versus 209). *Id.* at 174–75. Bank robbery in particular, I suspect, is a young man's crime. A bank robber must be willing to confront armed guards and able to make a quick getaway. To suppose that if Jackson is fortunate enough to live on in prison into his seventies or eighties it would still be necessary to detain him lest he resume his life of crime after almost a lifetime in prison is too speculative to warrant imprisoning him until he dies of old age. The probation officer who conducted the presentence investigation of Jackson and compiled a meticulous 16–page single-spaced presentence report covering every facet of Jackson's

history, personality, and criminal activity recommended a 10–year sentence. This may well be too short, but it is some indication that imprisonment for the rest of Jackson's life is too long if the only concern is with the crimes he might commit if he were ever released.

The remaining possibility is that this savage sentence is proper *pour encourager les autres*. Indeed, deterrence is the surest ground for punishment, since retributive norms are so unsettled and since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime "market." See Ehrlich, *On the Usefulness of Controlling Individuals: An Economic Analysis of Rehabilitation, Incapacitation, and Deterrence*, 71 Am. Econ.Rev. 307 (1981). Thus, even if one were sure that Jackson would be as harmless as a mouse in the last 10, or 15, or 20 years of his life, his sentence might be justified if the example of it were likely to deter other people, similarly situated, from committing such crimes. This is possible, but speculative; it was not mentioned by the district judge.

We should ask how many 35 year olds would rob a bank if they knew that if they were caught it would mean 20 years in prison with no possibility of parole (the sentence I would have given Jackson if I had been the sentencing judge), compared to the number who would do so if it would mean life in prison. Probably very few would be deterred by the incremental sentence. Bank robbery is a crime of acquisition, not of passion; the only gains are financial—and are slight (in 1986 the average "take" from a bank robbery was $2,664, see Uniform Crime Reports, *supra*, at 18). The net gains, when the expected cost of punishment is figured in, must be very small indeed. Clearance rates for bank robbery are very high; of all bank robberies investigated by the FBI during 1978 and 1979 (and virtually all bank robberies are reported and therefore investi-

gated), 69 percent had been cleared by arrest by 1982. U.S. Dept. of Justice, Bureau of Justice Statistics, *Bulletin: Bank Robbery*, Aug. 1984, at 3. Conviction rates are high (90 percent in federal prosecutions for bank robbery) and average punishments severe (more than 13 years for federal defendants). See U.S. Dept. of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics—1986, at 354, 356 (tabs. 5.15, 5.16). It's a losers' game at best. Persons who would go ahead and rob a bank in the face of my hypothetical 20–year sentence are unlikely to be deterred by tightening the punishment screws still further. A civilized society locks up such people until age makes them harmless but it does not keep them in prison until they die.