**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Warren James BLAND, Defendant–
Appellant.**

**No. 91–50148.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1991.

Decided March 20, 1992.

124

Steven J. Riggs, Asst. Federal Public Defender, San Diego, Cal., for defendant-appellant.

Larry Burns, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before: PREGERSON, CANBY and RYMER, Circuit Judges.

CANBY, Circuit Judge:

Warren James Bland appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Bland also appeals the life sentence imposed on him under 18 U.S.C. § 924(e)(1) for being an armed career criminal. We affirm the conviction and sentence.

## BACKGROUND

This is Bland's second appeal. Bland was arrested on February 9, 1987, pursuant to a warrant which related to the torture, molestation, and murder of a seven-year-old girl. Bland was shot in the leg when he attempted to flee from the police. After the arrest, the police searched the car in which Bland had been living and found a .22–caliber handgun sticking out of the pocket of a man's coat. Bland was tried in March 1989 and convicted of being a felon in knowing and willful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). We reversed and remanded for a new trial after concluding that the district court's instruction to the jury venire revealing Bland's three outstanding arrest warrants for murder was more prejudicial than probative. *United States v.*

*Bland,* 908 F.2d 471, 473 (9th Cir.1990) (*"Bland I"*). A superseding indictment was returned on September 27, 1988 which again charged Bland with violating 18 U.S.C. § 922(g)(1). Bland was tried before a jury in November 1990 and convicted. The district court sentenced him to life imprisonment without possibility of parole pursuant to 18 U.S.C. § 924(e).[1]

## DISCUSSION

### I.  *Limitation on Cross–Examination*

■ Bland argues that the district court impermissibly restricted his cross-examination of Brock McCue. We review a district court's limitation of cross-examination for an abuse of discretion. *United States v. Brown,* 936 F.2d 1042, 1048–49 (9th Cir. 1991).

Brock McCue was the manager of the Winchell's donut shop behind which Bland had been living in a blue Toyota automobile. McCue testified that Bland showed him the handgun which was the subject of this prosecution almost two weeks before Bland's arrest. McCue was able to identify the handgun retrieved by the police from Bland's car because he had noticed, while handling the gun on January 27, 1987, that there was a "slop in the cylinder" (*i.e.,* the cylinder did not line up properly with the barrel of the gun). Defense counsel sought to attack McCue's credibility by cross-examining him on his failure to mention the defective cylinder in any of his interviews with the various law enforcement officials who had questioned him.

■ Bland does not object to any express evidentiary ruling by the district court that limited his cross-examination of McCue. In fact, the record indicates that the district court stated on at least two occasions that the subject matter raised by Bland's counsel in his cross-examination of McCue was appropriate. Instead, Bland presents two contentions arising out of a side-bar conference that the government

---

**1.** This is not a Sentencing Guidelines case because the offense occurred before November 1987, the effective date of the Guidelines.

requested when Bland's counsel began to cross-examine McCue. First, Bland contends that the government sought to chill the cross-examination of McCue by threatening to elicit prejudicial rebuttal testimony. According to Bland, the government's threatened rebuttal would have been that the officers did not discuss the handgun with McCue because the investigators were seeking only information regarding Bland's involvement in three *strangulation* murders. Bland argues that any evidence suggesting that he was the subject of a murder investigation would have been grossly prejudicial and inadmissible under *Bland I.* Second, Bland contends that the district court abused its discretion when, in the face of the government's threat, it failed to prohibit preemptively the introduction of the prejudicial evidence.

Bland's arguments are meritless. Bland suggested in his cross-examination of McCue and stated in his opening argument that McCue was fabricating his testimony about the defective cylinder. The government's stated reason for requesting the side-bar conference was to inform the district court why McCue had not discussed the handgun in the interviews with the police agencies. At side bar, the government did nothing more than suggest that it would rebut the attack on McCue's credibility with the reports of the investigations, some portions of the reports, or testimony by the investigating officers. The government never threatened or indicated that it would inform the jury that Bland was under investigation for murder.

Nonetheless, the possibility remained that the government's rebuttal evidence would expose to the jury that Bland was under investigation for murder. We conclude that the district court took the necessary prophylactic steps short of a final evidentiary ruling to prevent any prejudice

to Bland. The court instructed the government to request a further side-bar conference before attempting to introduce any evidence which might reveal the murder investigations. The court also offered a preview of its view of the admissibility of any evidence relating to the murder investigations:

> I would hope, even assuming that [rebuttal witnesses were called], it wouldn't be necessary to go into the specific charge, I don't see what relevance that would have. It could presumably be that they were investigating him for something else and just leave it at that.

The district court was not under any obligation to make a preemptive ruling excluding evidence that the government might or might not offer in rebuttal.[2] Bland's counsel was free to continue to cross-examine McCue concerning his failure to discuss with the officers the allegedly defective cylinder of the handgun. The district court did not abuse its discretion.

## II. *Form 4473*

■ We review a district court's decisions to admit evidence under exceptions to the hearsay rule for an abuse of discretion. *United States v. Loera,* 923 F.2d 725, 729 (9th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991).

■ Alcohol, Tobacco & Firearms (ATF) Form 4473 is a firearms transaction record that all importers, manufacturers, and dealers are required by law to complete for each gun they dispose of or sell. 27 C.F.R. §§ 178.124. Exhibit 13 was a Form 4473 from Dooley's Hardware store which identified Ann Rippetoe as the original purchaser of the handgun found in Bland's possession when he was arrested. Rippetoe had died prior to trial. The parties stipulated that Rippetoe was the reg-

---

**2.** The district court explained at the side-bar conference why no ruling could be made *at that point:*

> I haven't heard [defense counsel's] questions yet, I haven't heard the witness' answers.
>
> Mr. Burns has raised a potential problem, we're all aware of it.
>
> And I guess the best I can do is that you proceed at your peril. I mean, if you get into

this and the government wants to come back with some of these detectives and indicate that he wasn't being investigated for this gun charge and that's why they didn't go into it in any detail, they may be able to offer that....

> Let's see what the cross reveals and then we'll go from there.

istered owner of the car in which Bland was living when he was arrested. The government offered Exhibit 13 to create an inference that Bland had the handgun in his possession on January 27th, the day McCue said Bland showed him the handgun. There is no dispute that Exhibit 13 was hearsay evidence which must fall within an exception to the hearsay rule to have been admitted properly.[3] We agree with the district court that Exhibit 13 was admissible as a business record.

■ Exhibit 13 was admissible under Fed.R.Evid. 803(6) if a custodian of the record or another qualified person established that (1) Exhibit 13 was made by a person with knowledge at or near the time of the incident recorded, and (2) Exhibit 13 was kept in the course of a regularly conducted business activity. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir.1991). Curtis Fredrickson, the manager of the sporting goods department at Dooley's Hardware and the custodian of the Form 4473 records, successfully laid the foundation when he testified that the person completing Exhibit 13 had knowledge of the transaction at the time it occurred and Exhibit 13 was maintained as a regularly conducted business activity as required by law. The fact that Fredrickson did not complete Exhibit 13 himself, and his failure to identify either the specific person who completed Exhibit 13 or when that person completed it, do not keep Exhibit 13 from being a business record. *Id.; United States v. Basey*, 613 F.2d 198, 201 n. 1 (9th Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 274 (1980). Fredrickson's testimony that Exhibit 13 was ordinarily completed at the time of the purchase was sufficient to satisfy the requirement that he establish that Exhibit 13 was completed "at or near the time of the incident recorded." *Ray*, 930 F.2d at 1370; *United States v. Huber*, 772 F.2d 585, 591 (9th Cir.1985).

Finally, Bland is mistaken in his contention that Exhibit 13 is not a business record either because it contained erasures or was incomplete. *United States v. Foster*, 711 F.2d 871, 882 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

■ Bland argues that the statement contained in Exhibit 13 that Rippetoe was the purchaser of the gun was "double hearsay" and should not have been admitted. Rippetoe presumably furnished her name to the person completing Exhibit 13 who then, in turn, included her name on Exhibit 13. The admissibility of Rippetoe's name, a hearsay statement within Exhibit 13, therefore turns on whether the person completing Exhibit 13 was able in some way to verify Rippetoe's name. *United States v. Zapata*, 871 F.2d 616, 625 (7th Cir.1989); *United States v. Lieberman*, 637 F.2d 95, 101 (2d Cir.1980). Federal regulations require that sellers verify purchasers' names before completing Form 4473. 27 C.F.R. § 178.124(c)(1). Fredrickson testified that Dooley's employees were required to verify gun purchasers' names with a picture identification. In addition, Rippetoe was under a legal duty to provide truthful information for Form 4473. *See* 18 U.S.C. § 922(a)(6). No double hearsay problem exists.

In sum, foundational testimony established that Exhibit 13 was created and kept in the manner required by 27 C.F.R. §§ 178.123 and 178.124. "Records kept pursuant to these regulations satisfy the requirements of Rule 803(6) that the record be made at or near the time of the event, recorded by a person with knowledge, and that it be kept in the regular course of business." *United States v. Veytia–Bravo*, 603 F.2d 1187, 1192 (5th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). The district court did

---

**3.** Bland attempts to generate a confrontation clause issue from the admission of Exhibit 13. He cites *United States v. Oates*, 560 F.2d 45, 81 (2d Cir.1977), for the proposition that a statement admissible under a recognized hearsay exception may still violate a defendant's sixth amendment rights. *Oates* is no longer valid authority on this point. If Exhibit 13 was admitted under a "firmly rooted" exception to the hearsay rule, like the business records or official records exceptions, no violation of the confrontation clause occurred. *Ohio v. Roberts*, 448 U.S. 56, 66 & n. 8, 100 S.Ct. 2531, 2539 & n. 8, 65 L.Ed.2d 597 (1980); *United States v. Ray*, 930 F.2d 1368, 1371 (9th Cir.1991).

not abuse its discretion by admitting Exhibit 13 into evidence.[4]

### III. *The Sentence*

#### A. Rule of Lenity

■ The district court sentenced Bland to life imprisonment without possibility of parole pursuant to 18 U.S.C. § 924(e)(1). That statute provides that defendants who violate 18 U.S.C. § 922(g) and have three previous violent felony or serious drug convictions "shall be fined not more than $25,000 and imprisoned not less than fifteen years...." 18 U.S.C. § 924(e). Bland argues that, because the statute prescribes no maximum penalty, the rule of lenity requires that § 924(e) be interpreted to preclude a life sentence.

The plain words of section 924(e) are contrary to Bland's argument, and so are numerous decisions of courts that have considered the question. *See United States v. Tisdale,* 921 F.2d 1095, 1100 (10th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991); *United States v. Lego,* 855 F.2d 542, 546 (8th Cir. 1988); *United States v. Blannon,* 836 F.2d 843, 844–45 (4th Cir.), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *see also United States v. Jackson,* 835 F.2d 1195, 1197 (7th Cir.1987) (penalty statutes without specified maximums implicitly authorize a maximum sentence of life), *cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988); *Walberg v. United States,* 763 F.2d 143, 148–49 (2d Cir.1985) (same).

While we have not yet ruled on the point raised by Bland, we have approved a sentence of 360 months under section 924(e), and on that occasion we recited without disapproval the district court's determination that the maximum sentence was life imprisonment. *United States v. O'Neal,* 937 F.2d 1369, 1374 n. 7 (9th Cir.1990). We now have little difficulty in holding that a life sentence is authorized by section 924(e).

The rule of lenity is simply unavailing in the face of the statutory language and the clear intent behind it. The rule of lenity in this context "means that the Court will not interpret a federal criminal statute so as to increase the penalty it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). Section 924(e) is not ambiguous in terms, and it was "clearly intended to incapacitate and to punish severely" recidivist violent and armed felons. *Blannon,* 836 F.2d at 845; *accord Jackson,* 835 F.2d at 1197; *United States v. Gourley,* 835 F.2d 249, 253 (10th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). The rule of lenity does not permit us to create an ambiguity where none exists. *See Blannon,* 836 F.2d at 845. The district court did not err in determining that section 924(e) authorized a sentence of life imprisonment without possibility of parole.

#### B. Cruel and Unusual Punishment

■ Bland argues that the imposition of a life sentence without possibility of parole for being a felon in possession of a firearm is unconstitutionally disproportionate. We review *de novo* the legality of a district court's sentence under the eighth amendment. *United States v. Ahumada–Avalos,* 875 F.2d 681, 684 (9th Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989). The Supreme Court most recently addressed the question of proportionality as a component of the eighth amendment in *Harmelin v. Michigan,* — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). No majority opinion emerged in *Harmelin* on the question of proportionality. Justice Scalia's two-Justice (with Chief Justice Rehnquist) plurality concluded that there was *no* proportionality review under the eighth amendment except with respect to death sentences. Jus-

---

**4.** The district court also admitted Exhibit 13 into evidence under the official records exception, Fed.R.Evid. 803(8), and the residual hearsay exception, Fed.R.Evid. 803(24). In light of our conclusion that Exhibit 13 was admissible as a business record, we need not consider these other hearsay exceptions.

tice Kennedy's three-Justice concurrence (with Justices O'Connor and Souter) concluded that the eighth amendment contains a *narrow* proportionality principle, which was not confined to death penalty cases. Because neither position received a majority vote, the holding in *Harmelin* should be viewed as "that position taken by those Members who concurred in the judgments on the narrowest grounds...." *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) (citation omitted). We conclude that Justice Kennedy's view that the eighth amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime" is the "rule" of *Harmelin. Accord United States v. Johnson*, 944 F.2d 396, 408–09 (8th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir.1991).

■ The threshold determination in the eighth amendment proportionality analysis is whether Bland's sentence was one of "the rare case[s] in which a ... comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin*, 111 S.Ct. at 2707 (Kennedy, J., concurring). In judging the appropriateness of Bland's sentence under a recidivist statute, we may take into account the government's interest not only in punishing the offense of conviction, but also its interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Rummel v. Estelle*, 445 U.S. 263, 276, 100 S.Ct. 1133, 1140, 63 L.Ed.2d 382 (1980). Bland's history of criminal conduct refutes any possibility of disproportionality. He

has been convicted of thirteen violent felonies, including assault, rape, kidnapping, burglary, assault with intent to commit rape, forcible lewd act on a child, and forcible oral copulation.[5] In light of these grave crimes, Bland's sentence under section 924(e) "does not give rise to an inference of gross disproportionality." *Harmelin*, 111 S.Ct. at 2707 (Kennedy, J., concurring). There is accordingly no need to compare his sentence with others across the nation. *Id.*[6]

## CONCLUSION

The judgment of the district court is AFFIRMED.

---

**5.** Bland's crimes are far more serious than those of the defendant in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), who had committed non-violent crimes of third degree burglary, obtaining money by false pretenses, grand larceny, and writing a "no account" check with intent to defraud. In *Solem*, the Supreme Court held a sentence of life imprisonment without parole to be disproportionate. In *Rummel v. Estelle*, however, the Court upheld a life sentence of a recidivist convicted of fraudulent use of a credit card for $80, passing a forged

check for $28.36, and obtaining $120.75 under false pretenses. In *Harmelin*, it upheld a sentence of life imprisonment without possibility of parole for possession of 672 grams of cocaine.

**6.** Bland also argues that McCue's out-of-court identification of the gun was impermissible because the ATF agent brought McCue only the one gun to identify, and that the application of 18 U.S.C. § 924(e) violates the *ex post facto* prohibition. Neither argument has merit.