**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Conley D. WOLFSWINKEL,
Defendant–Appellant.**

**No. 93–10763.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 1994.

Decided Jan. 5, 1995.

John P. Frank, Lewis and Roca, Phoenix, AZ, William J. Hardy and W. Gary Kohlman, Kleinfeld, Kaplan and Becker, Washington, DC, for defendant-appellant.

Richard A. Friedman, Asst. U.S. Atty., Crim. Div., Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: FARRIS, BOOCHEVER, and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Conley Wolfswinkel was convicted of bank fraud, conspiracy to commit bank fraud and

misapplication of bank funds, and aiding and abetting misapplication of bank funds. He appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

Appellant is a major real estate developer in Arizona. At his trial, the prosecution presented evidence that from June through August of 1986, he employed a scheme designed to satisfy the cash needs of his business without liquidating any of its assets. As payment for his business obligations, appellant wrote ordinary checks that were not backed by sufficient funds (NSF checks). When those checks were to be presented, he then wrote checks from his accounts at other banks in order to cover the original checks. Often, the new checks were also not backed by sufficient funds.

Eventually, several banks began requiring appellant to cover his NSF checks with cashier's checks, which are the direct obligation of the issuing bank. Therefore, appellant persuaded John O'Neill, an officer at United Bank of Arizona, to allow him to purchase cashier's checks with NSF checks. Appellant also asked O'Neill to delay processing those NSF checks for several days until he could provide sufficient funds to cover them. On several occasions, O'Neill delayed processing the cashier's checks as well, but it is unclear whether appellant encouraged this practice. Prior to trial, O'Neill pled guilty to misapplication of bank funds and testified for the prosecution.

The jury found appellant guilty of one count of bank fraud. That count involved appellant's purchase and deposit of a $1,760,-546 cashier's check issued by United Bank on August 7, 1986. The jury also found appellant guilty of several counts of aiding and abetting O'Neill's misapplication of bank funds, and of conspiracy to commit both these crimes. The district court sentenced appellant to five years probation and a $75,-000 fine.

## I.

■ Appellant first claims that he has been convicted multiple times for the same offense, thereby subjecting him to double jeopardy. He claims that his conviction for bank fraud under 18 U.S.C. § 1344 and his conviction for misapplication of bank funds under 18 U.S.C. § 656 were separate punishments for the same offense. *See Ball v. United States,* 470 U.S. 856, 861, 865, 105 S.Ct. 1668, 1671, 1673, 84 L.Ed.2d 740 (1985) (each criminal conviction, regardless of the sentence imposed, is a separate punishment). Among other things, the Double Jeopardy clause protects against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). However, since Congress has full authority to define distinct offenses and to prescribe punishments for those offenses, "the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed." *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). Thus, in this context, the Double Jeopardy clause only requires that a court not exceed its legislative authorization. *Id.* If Congress enacts statutes that indicate an intent to impose separate punishments, those statutes define separate offenses, and the punishments do not violate the Constitution. *Id.*

■ Whether a defendant's double jeopardy rights have been violated is a question of law reviewed de novo. *United States v. Horodner,* 993 F.2d 191, 193 (9th Cir.1993). We conclude that appellant was not punished multiple times for the same offense.

■ In order to determine whether bank fraud and misapplication of bank funds are the same offense, we look to congressional intent. We first use the rule of statutory construction announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. When applying this test, we focus upon the statutory elements of each offense, rather than on the actual evidence presented at trial. *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct.

2260, 2265, 65 L.Ed.2d 228 (1980). After applying this so-called "same elements" test, we then look to other indications of legislative intent in order to insure that Congress did not express a contrary intent. *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981).

Application of the *Blockburger* test indicates that the bank fraud and misapplication statutes do not prohibit the same offense. The version of 18 U.S.C. § 1344 (bank fraud) applicable to appellant's case provides: "Whoever knowingly executes, or attempts to execute, a scheme or artifice—(1) to defraud a federally chartered or insured financial institution ... shall be fined not more than $10,000, or imprisoned not more than five years, or both." The applicable version of 18 U.S.C. § 656 (misapplication) provides: "whoever, being an officer ... of ... any Federal Reserve bank, member bank, national bank or insured bank ... willfully misapplies any of the moneys intrusted to the custody or care of such bank ... shall be fined not more $5,000 or imprisoned not more than five years, or both."

Clearly, in order to convict, the bank fraud statute requires proof that the defendant executed a scheme or artifice to defraud. "For purposes of the bank fraud statute, the terms 'scheme' and 'artifice' are defined to include 'any plan, pattern, or [course] of action ... intended to deceive....'" *United States v. Cloud,* 872 F.2d 846, 850 (9th Cir.) (quoting *United States v. Goldblatt,* 813 F.2d 619, 624 (3d Cir.1987), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). The misapplication statute, on the other hand, does not require such a scheme; it requires only an isolated act of misapplication. It is equally clear that the misapplication statute requires the action of a bank officer in order to convict. The bank fraud statute does not. Therefore, each statute requires proof of an element that the other does not. The *Blockburger* analysis indicates that the bank fraud and misapplication statutes do not both punish the same offense. *See United States v. Henderson,* 19 F.3d 917, 926 (5th Cir.) (holding same), *cert. denied,* —— U.S. ——, 115 S.Ct. 207, 130 L.Ed.2d 137 (1994).

Other sources of legislative intent do not indicate to the contrary. The legislative history indicates that Congress enacted § 1344 to assure federal criminal jurisdiction for banking offenses. *See United States v. Seda,* 978 F.2d 779, 782 (2nd Cir.1992). This history is not inconsistent with an intent to punish conduct under both statutes.

Appellant urges this court to apply the less mechanistic approach to the *Blockburger* test announced in *United States v. Seda,* 978 F.2d 779. The Supreme Court's recent decision in *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), disposes of this contention. While *Dixon* was a plurality decision, all of the Justices agreed that as a general matter, when a defendant challenges multiple punishments imposed at a single trial, a strict application of the *Blockburger* test to the elements of the charged statutes is appropriate. *Id.*

Because application of that test to § 1344 and § 656 reveals that each statute requires proof of an element that the other does not, those statutes do not proscribe the same offense. Therefore, the district court did not violate double jeopardy by convicting and sentencing appellant under both statutes.

## II.

■ Appellant next claims that there was insufficient evidence to support his conviction for bank fraud. When reviewing for sufficiency of the evidence, we affirm a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Appellant claims that in order to convict him of bank fraud under 18 U.S.C. § 1344(1), the prosecution was required to show that his scheme placed at least one bank at a risk of loss. The district court so instructed the jury. However, the government contends on appeal that risk of loss is not an essential element of the crime. Rather, the government argues, it is only one of several possible ways of proving intent to

defraud, which is an element of the crime. The Courts of Appeals that have adopted a "risk of loss" analysis have not made clear whether its proof is necessary or merely sufficient to show intent. *See, e.g., United States v. Brandon,* 17 F.3d 409, 426 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 81, —— L.Ed.2d —— (1994); *United States v. Barakett,* 994 F.2d 1107, 1110–11 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 701, 126 L.Ed.2d 668 (1994).

The Ninth Circuit has never adopted a "risk of loss" analysis in bank fraud cases. In this case, we need not decide whether exposing a bank to risk of loss is necessary to show appellant's intent. If it is necessary, the government offered sufficient evidence at trial to prove that the conduct for which appellant was convicted exposed at least one bank to a risk of loss.

It is undisputed that appellant purchased a $1,760,546 cashier's check from United Bank with an ordinary business check written on non-sufficient funds. Appellant then deposited that check at Valley National Bank. The government presented testimony that United Bank was obligated to pay that cashier's check, even if appellant had never provided funds to cover the NSF check used to purchase it. Therefore, United Bank faced a risk of loss.

The appellant contends that United Bank never faced any risk of loss because if he had not covered that NSF check, the bank could have recovered its losses through collateral he had provided the bank. He presented evidence of an agreement securing any of his future obligations to the bank with real property whose free-and-clear value exceeded $4 million. However, even if we were to accept appellant's interpretation of this agreement as securing all future uncovered NSF checks, we do not accept appellant's assertion that this arrangement exposed the bank to no risk.

First, the bank would have faced the cost of liquidating the property upon foreclosure. Secondly, the bank faced the risk that the property's market value would fall before foreclosure. Thirdly, it is undisputed that appellant was suffering from a severe cash shortage at the time of this transaction.

Two months earlier, he had been forced to borrow money at an interest rate of 120% per annum. Under these circumstances, there was a risk that appellant's entire enterprise would collapse, resulting in bankruptcy proceedings. United Bank certainly would have faced substantial risk as well as legal costs in a competition with other creditors to obtain the value of that property.

Therefore, sufficient evidence was presented at trial to support appellant's conviction for bank fraud.

### III.

Appellant contends that there was insufficient evidence to support his conviction for aiding and abetting misapplication of bank funds. To prove misapplication of bank funds, the prosecution must prove a 1) willful misapplication of funds, 2) of a federally insured bank, 3) with the intent to injure or defraud the bank, 4) by an employee of the bank. *United States v. Musacchio,* 968 F.2d 782, 787 (9th Cir.1991). The government can prove the misapplication element by showing that a bank has been "deprived of its right to . . . make its own decision as to how [its] funds are used." *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.) (quotation omitted), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). To show that the bank was deprived of that right, the government must show that funds were disbursed from the bank under a false pretense designed to deceive bank officials. *Id.; United States v. Unruh,* 855 F.2d 1363, 1371 (9th Cir.1987), *cert. denied,* 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988). To prove aiding and abetting a misapplication of bank funds, the government must show that the defendant knew of a bank employee's misapplication and acted with intent to further it. *Unruh,* 855 F.2d at 1371.

Appellant does not dispute that he encouraged John O'Neill, an officer at United Bank, to issue him multi-million dollar cashier's checks in exchange for NSF checks. Appellant also does not dispute that he asked O'Neill to delay processing his NSF checks until he could cover them. Furthermore, appellant does not dispute that he immedi-

ately drew upon the cashier's checks issued by United Bank when he deposited them in other bank accounts.

This evidence was sufficient to convict appellant. O'Neill and other witnesses testified that O'Neill's compliance with these requests was not authorized by bank policy. This violated bank policy because, by issuing cashier's checks for NSF checks, O'Neill was making multi-million dollar short term loans to appellant, despite a $250,000 limit on O'Neill's lending authority. In addition, by delaying the processing of NSF checks, O'Neill prevented bank records from reflecting that appellant was consistently purchasing cashier's checks without sufficient funds. O'Neill testified that he purposely did not inform senior bank officials of these practices. Therefore, O'Neill committed misapplication by preventing senior bank officials from deciding what "loans" would be disbursed, and by deceiving those officials about the existence of those "loans." *See Hazeem,* 679 F.2d at 772. Appellant aided and abetted O'Neill's misapplication by requesting that he do it. *See Unruh,* 855 F.2d at 1371.

Contrary to appellant's assertion, the prosecution was not required to prove that appellant encouraged O'Neill to delay the processing of cashier's checks (as opposed to NSF checks). The practices described above were sufficient to establish aiding and abetting misapplication of bank funds.

### IV.

Appellant claims that the prosecution's several references to Charles Keating during the course of his trial deprived him of a fair trial. We have established that the prosecution may not prove a defendant's guilt by showing his association with unsavory characters. *United States v. Dickens,* 775 F.2d 1056, 1058 (9th Cir.1985). It is error for the prosecution to make such references unless the evidence presented is otherwise relevant to the defendant's guilt. *Id.; see also United States v. Love,* 534 F.2d 87 (6th Cir.1976) (attempt to establish guilt by association is prosecutorial misconduct).

Appellant did not timely object to most of the prosecution's references to Keating. Therefore, we will reverse only if those references were plain error: if they "under-

mine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice." *United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985). We agree with the district court that some of the prosecution's unobjected-to references to Keating were unfortunate and improper. For instance, the use of Keating specifically as a hypothetical perpetrator of fraud was not necessary or relevant to the issues at trial. However, we also agree with the district court judge, who was in the best position to consider the prejudicial impact of those references, that they did not cause appellant's trial to become fundamentally unfair. The district court rejected appellant's motion for a mistrial filed in response to those references. This decision is entitled to deference. *United States v. Homick,* 964 F.2d 899, 906 (9th Cir.1992). Furthermore, the references to Keating were not a major component of the prosecution's case. Finally, the district court mitigated the effect of those references by instructing the jury that appellant "is not now and never has been charged in a criminal case with misconduct relating to Keating." Therefore, to the extent that any of the prosecution's unobjected-to references were error, they were not plain error.

Appellant did timely object to the prosecution's last two references to Keating. However, those references were not error. We agree with the district court that appellant's relationship to Keating was relevant in those instances. The prosecution was attempting to show that appellant's records did not accurately reflect a high interest loan he had received from Keating. This loan demonstrated that appellant's business required substantial outside sources of cash in order to continue operation. This fact was relevant to show appellant's motive to obtain funds by fraud. Therefore, in these instances, the prosecution was not simply demonstrating guilt by association, but rather attempting to prove a fact relevant to appellant's guilt. *See Dickens,* 775 F.2d at 1058.

AFFIRMED.