113 F.3d 1243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eliodero DELACORTE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Guillermo Willie RIOJAS, Defendant-Appellant.
 Nos. 95-10524, 95-10543.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 16, 1996.
Decided May 5, 1997.
 
 1
 Before: BEEZER and THOMPSON, Circuit Judges, and GILLMOR, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Eliodero DeLaCorte and Guillermo Willie Riojas appeal their convictions for carjacking, 18 U.S.C. § 2119, interference with interstate commerce by force and violence, 18 U.S.C. § 1951(a), and use of a firearm during a crime of violence, 18 U.S.C. § 924(c)(1). DeLaCorte also appeals his sentence of 1,128 months imprisonment.
 
 
 4
 DeLaCorte contends that (1) his statements to police were involuntary; (2) hearsay statements of a coparticipant were improperly admitted; (3) admission of evidence that Riojas threatened a government witness entitled DeLaCorte to a mistrial; (4) the evidence presented was insufficient to support his convictions; (5) his convictions for both carjacking and firearm use in connection with the same conduct constituted double jeopardy; and (6) his sentence was unconstitutional and illegal.
 
 
 5
 Riojas argues that (1) hearsay statements were improperly admitted; (2) jury instructions erroneously defined a charged offense; and (3) the evidence presented was insufficient to support his convictions.
 
 
 6
 We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm DeLaCorte's convictions and his sentence. One of DeLaCorte's carjacking convictions is affirmed in a separate opinion filed herewith. We affirm all of Riojas' convictions.
 
 DISCUSSION
 
 7
 I. Voluntariness of DeLaCorte's Statements to Police
 
 
 8
 DeLaCorte's statements to the police were voluntary. We review a determination of the voluntariness of a confession de novo, and the factual findings underlying such a determination for clear error. United States v. Benitez, 34 F.3d 1489, 1495 (9th Cir.1994), cert. denied, 513 U.S. 1197, 115 S.Ct. 1268 (1995). The government must prove voluntariness by a preponderance of the evidence. Id.
 
 
 9
 A statement is voluntary if it is the product of a rational intellect and free will. United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (citing Blackburn v. Alabama, 361 U.S. 199, 208 (1960)). Coercive police activity is a prerequisite to a finding that a confession was not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. Colorado v. Connelly, 479 U.S. 157, 167 (1986).
 
 
 10
 In determining that DeLaCorte's statements were voluntary, the District Court applied the factors specified in 18 U.S.C. § 3501. The District Court concluded that: (1) the questioning occurred within eight hours after DeLaCorte's arrest; (2) DeLaCorte knew he was a suspect in armed robbery and carjacking investigations; (3) DeLaCorte knew independently and was advised he did not have to make a statement; (4) DeLaCorte knew independently and was advised before questioning of his right to counsel; and (5) DeLaCorte did not invoke his right to counsel.
 
 
 11
 The District Court credited police testimony that DeLaCorte was not mistreated and that the police gave DeLaCorte Miranda warnings, after which DeLaCorte indicated that he understood his rights and wished to speak to police. The District Court disbelieved DeLaCorte's allegations of police abuse and failure to administer Miranda warnings.
 
 
 12
 DeLaCorte's physical condition at the time of his arrest did not preclude him from making voluntary statements to the police. Statements made while in pain and on medication can still be voluntary. United States v. George, 987 F.2d 1428, 1430-31 (9th Cir.1993); Kelley, 953 F.2d at 565; United States v. Martin, 781 F.2d 671, 673-74 (9th Cir.1985). DeLaCorte had been treated for a facial abrasion and for a dog bite on his calf. The District Court believed the police officers' testimony that DeLaCorte was conscious and coherent, appeared to understand the questions asked, and responded to them rationally.
 
 
 13
 The District Court's credibility determinations and factual findings underlying the determination of voluntariness were not clearly erroneous.
 
 
 14
 II. Admission of Hearsay Statements of Coparticipant
 
 
 15
 Both DeLaCorte and Riojas contend that the District Court erred in admitting Paul Ramos' statements to police as substantive evidence of the defendants' guilt. The District Court did not err in admitting the statements. Whether a district court correctly construed the hearsay rule is a question of law reviewed de novo. United States v. Gilbert, 57 F.3d 709, 711 (9th Cir.1995). A district court's decision to admit evidence under exceptions to the hearsay rule is reviewed for abuse of discretion. Id. at 711 (quoting United States v. Bland, 961 F.2d 123, 126 (9th Cir.), cert. denied, 506 U.S. 858 (1992)).
 
 
 16
 Ramos' statements were properly admitted as impeachment evidence. A party may impeach its own witness. Fed.R.Evid. 607. The government cannot "knowingly elicit testimony from a witness in order to impeach him with otherwise inadmissible testimony." Gilbert, 57 F.3d at 711. There is no indication that the government knew Ramos would testify that he acted alone. Once he did, therefore, the government's efforts to impeach him were proper under Rule 607. The District Court, however, admitted Ramos' statements as substantive evidence of the defendants' guilt and did not instruct the jury to consider the statements only for impeachment purposes.
 
 
 17
 Federal Rule of Evidence 801(d)(1)(A) authorizes the admission of prior inconsistent statements by testifying witnesses as substantive evidence if the prior statements were given under oath. Ramos' statements to Detective Legg were not given under oath. Rule 801(d)(1)(A) does not provide the exclusive test for admission of prior inconsistent statements. United States v. Valdez-Soto, 31 F.3d 1467, 1471 (9th Cir.1994), cert. denied, 514 U.S. 1113, 115 S.Ct. 1969 (1995). Prior inconsistent statements not qualifying for admission under Rule 801(d)(1)(A) can still be admitted under the catch-all hearsay exception, Rule 803(24). Id.
 
 
 18
 Ramos' statements were properly admitted as substantive evidence of the defendants' guilt under Rule 803(24).[1] No Confrontation Clause issue arises from the admission of hearsay statements where the declarant is on the stand available for cross-examination. United States v. Valdez-Soto, 31 F.3d 1467, 1470 (9th Cir.1994), cert. denied, 514 U.S. 1113, 115 S.Ct. 1969 (1995). Ramos took the stand, and defense counsel had an opportunity to cross-examine him.
 
 
 19
 In the absence of Confrontation Clause concerns, "the trial judge has a fair degree of latitude in deciding whether to admit statements under Fed.R.Evid. 803(24)." Id. at 1471. Circumstances indicating that statements are reliable support their admission. These indicia of reliability can include corroborating evidence, as well as evidence regarding the declarant's perception, memory, and sincerity. Id. at 1471. In United States v. Valdez-Soto, 31 F.3d 1467 (9th Cir.1994), cert. denied, 514 U.S. 1113, 115 S.Ct. 1969 (1995), the court noted that the declarant made the statements close in time to his arrest, the statements were contemporaneously recorded, the declarant cooperated unhesitatingly with police when first arrested, and the declarant admitted making significant parts of the earlier statements, thus allowing defense counsel to question him as to the differences between his stories. Id. at 1472-73.
 
 
 20
 Here both the surrounding circumstances and corroborating evidence support the reliability of Ramos' statements. Ramos spoke to Detective Legg very soon after his arrest, Legg recorded the statements in a report, and Ramos was initially cooperative.
 
 
 21
 Corroborating evidence supports the reliability of Ramos' statements that DeLaCorte participated in the crimes for which he was convicted. DeLaCorte himself admitted his involvement to the police. Physical and testimonial evidence linked DeLaCorte to the crimes. Ramos' and DeLaCorte's fingerprints were found on Singh's car. A witness to the 7-11 robbery picked both men out of a photographic lineup. Bullet casings found at both 7-11 and Andre's matched the guns found on DeLaCorte and Ramos when they were arrested.
 
 
 22
 Corroborating evidence also supports the reliability of Ramos' statements that Riojas participated in both the Andre's robbery and the Brantzeg carjacking. Witnesses to the Andre's robbery indicated that three men participated in the robbery. Witnesses also testified that the shotgun recovered from Riojas when he was arrested was similar to the one used in the Andre's robbery. Bullet casings recovered from Andre's matched the .25 caliber pistol found in Brantzeg's car when police arrested Riojas and Ramos. Brantzeg testified that three armed Hispanic men approached her. Police arrested Riojas and Ramos together in Brantzeg's car.
 
 
 23
 Ramos' availability for cross-examination also decreases concerns about the reliability of his prior statements. "[T]he degree of reliability necessary for admission is greatly reduced where, as here, the declarant is testifying and is available for cross-examination, thereby satisfying the central concern of the hearsay rule." Id. at 1472 (quoting United States v. McPartlin, 595 F.2d 1321, 1350-51 (7th Cir.), cert. denied, 444 U.S. 833 (1979)).
 
 
 24
 Finally, the circumstances under which Ramos testified support the admission of his earlier statements to police. On the morning that Ramos was to testify, he was housed in a holding cell near a cell housing Riojas and DeLaCorte. Deputy U.S. Marshal Robert Ivancovich overheard Riojas threaten Ramos, saying, "Shut up, don't say anything or I'll kill you. If you mention anything, you're dead." The government reported the incident to the court at a hearing outside the presence of the jury. At the hearing, Ramos indicated that he would testify that he committed the crimes alone and that he would deny implicating either Riojas or DeLaCorte in his earlier statements to police. After the hearing, Ramos testified before the jury that he committed the crimes alone, that he did not recognize either defendant, and that he had not implicated either defendant in his statements to police. Later that day, Ivancovich testified about the threats that he overheard Riojas make against Ramos.
 
 
 25
 Under these circumstances, Rule 803(24)(C)'s concern for the "interests of justice" supports the admission of Ramos' statements. First, if Riojas' threats caused Ramos to change his testimony and state that Riojas was not involved in the crimes, exclusion of Ramos' prior statements implicating Riojas would reward Riojas for his threats. Refusing to admit Ramos' statements against DeLaCorte would also make DeLaCorte the beneficiary of Riojas' threats.
 
 
 26
 Second, when the government put Ramos on as a witness, it could not be certain how he would testify. In his statement to police, Ramos implicated DeLaCorte and Riojas. Immediately prior to testifying, in the hearing outside the presence of the jury, Ramos indicated that he would not implicate either defendant. Given these conflicting accounts, the government could not be certain what Ramos would say before the jury. When Ramos subsequently testified that he committed the crimes alone, the "interests of justice" supported admission of his prior inconsistent statements to counter the impact of the unexpected testimony.
 
 
 27
 Even if admission under 803(24) were erroneous, any error was harmless. "An error in the admission of hearsay evidence is harmless if it does not affect substantial rights of the defendants." United States v. Garza, 980 F.2d 546, 553 (9th Cir.1992). Admission of hearsay evidence injures no substantial rights when other evidence in the case is sufficient to convict the defendant. Id. The extensive corroborating evidence was sufficient to convict both DeLaCorte and Riojas.
 
 III. DeLaCorte's Motion for Mistrial
 
 28
 The District Court did not abuse its discretion in denying DeLaCorte's motion for a mistrial based on the admission of testimony that codefendant Riojas threatened a government witness. United States v. George, 56 F.3d 1078, 1082 (9th Cir.) (review of denial of motion for mistrial is for abuse of discretion), cert. denied, --- U.S. ----, 116 S.Ct. 351 (1995).
 
 
 29
 Admission of evidence against one defendant can cause prejudice to a codefendant. Zafiro v. United States, 506 U.S. 534, 539 (1993). Limiting instructions will often cure such spillover prejudicial effects. Id.; United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir.), cert. denied, 449 U.S. 856 (1980); United States v. Jenkins, 785 F.2d 1387, 1394 (9th Cir.), cert. denied sub nom Prock v. United States, 479 U.S. 855 (1986), and cert. denied sub nom White v. United States, 479 U.S. 889 (1986). The defendant must show that the limiting instructions given were insufficient for the jury to compartmentalize the evidence against each defendant. United States v. Candoli, 870 F.2d 496, 510 (9th Cir.1989).
 
 
 30
 The government was careful to establish in testimony before the jury that there was no evidence that DeLaCorte made any threats. Deputy U.S. Marshal Robert Ivancovich, who testified that Riojas had threatened government witness Paul Ramos, did not implicate DeLaCorte in making any threats. The government also clarified that it was not alleging that DeLaCorte made any threats. The prosecutor asked Ivancovich: "Just so we're perfectly clear on this, during this entire time, you never heard Mr. Delacorte saying anything at all, correct?" Ivancovich answered: "No, I didn't hear him say anything." The prosecutor's statement to the District Court that "what we're trying to get to the jury is the truth, and the truth is that that gang member [Riojas] and perhaps that one [DeLaCorte] threatened this witness" was not made in the presence of the jury.
 
 
 31
 The District Court gave limiting instructions to the jury: "Any testimony concerning coercion by defendant Willie Riojas is in no way attributable to any other defendant on trial and may not be considered by you in determining whether the government has proven the charge against any other defendant beyond a reasonable doubt." The jury was only asked to compartmentalize this single piece of evidence. The District Court did not abuse its discretion in denying DeLaCorte's motion for a mistrial.
 
 
 32
 IV. Jury Instructions for 18 U.S.C. § 1951(a)
 
 
 33
 The District Court correctly overruled Riojas' objections to the jury instructions regarding the impact on interstate commerce necessary for conviction under 18 U.S.C. § 1951(a). Whether a jury instruction misstates elements of a statutory crime is a question of law and is reviewed de novo. United States v. Von Willie, 59 F.3d 922, 927 (9th Cir.1995).
 
 
 34
 Riojas challenges two instructions proposed by the government and accepted by the District Court. The government's proposed instruction number 26 provided that conviction under § 1951(a) required that "commerce from one state to another was or would have been affected in some way" by the robbery. Proposed instruction number 29 provided that the requisite "[e]ffect on interstate commerce, however small, is established by proof of an actual impact, however small, or in the absence of actual impact, by proof of a probable or potential impact."
 
 
 35
 Section 1951(a) proscribes robberies that "in any way or degree obstruct[ ], delay[ ], or affect[ ] commerce or the movement of any article or commodity in commerce...." 18 U.S.C. § 1951(a). Only a "de minimis" effect on interstate commerce is necessary to support a prosecution under § 1951(a). United States v. Atcheson, 94 F.3d 1237, 1241-42 (9th Cir.1996); United States v. Woodruff, 50 F.3d 673, 676 (9th Cir.1995); United States v. Phillips, 577 F.2d 495, 501 (9th Cir.), cert. denied, 439 U.S. 831 (1978). To satisfy the "de minimis" standard, the effect on commerce need only be probable or potential, rather than actual. Atcheson, 94 F.3d at 1243; Woodruff, 50 F.3d at 677; Phillips, 577 F.2d at 501. To establish a potential impact, " '[i]t is enough that the scheme, if successful, would have affected commerce.' " United States v. Pascucci, 943 F.2d 1032, 1035 (9th Cir.1991) (quoting United States v. Rushdan, 870 F.2d 1509, 1512 (9th Cir.1989)).
 
 
 36
 Here both of the challenged instructions accurately stated the requirements of § 1951(a) by requiring proof of a potential impact on interstate commerce. Instruction number 29 required proof of a "probable or potential" impact on interstate commerce, tracking the language of several of the above cases. Instruction number 26, requiring that commerce "was or would have been affected" by the robbery, also required a potential impact and tracked the language of United States v. Pascucci, 943 F.2d 1032 (9th Cir.1991).
 
 V. Sufficiency of the Evidence
 
 37
 The government presented sufficient evidence to support each of the convictions challenged by DeLaCorte and Riojas. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995). Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. United States v. Lennick, 18 F.3d 814, 820 (9th Cir.), cert. denied, 513 U.S. 856, 115 S.Ct. 162 (1994). Mere suspicion or speculation is insufficient. United States v. Dinkane, 17 F.3d 1192, 1196 (9th Cir.1994). The uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or insubstantial on its face. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991), cert. denied, 502 U.S. 1062 (1992).
 
 Robbery of the 7-11 Store
 
 38
 The robbery of the 7-11 store had a sufficient nexus with interstate commerce to support DeLaCorte's conviction under 18 U.S.C. § 1951(a). Actual or threatened depletion of resources of a business engaged in interstate commerce is a sufficient nexus for § 1951(a). Phillips, 577 F.2d at 501. Miann Wilson, the clerk working at 7-11 during the robbery, testified that the perpetrators took cash from the register. Jeff Heatherington, a loss prevention manager for Southland Corporation, the owner of 7-11, testified that 7-11 stores in California purchase a number of products that are manufactured or distributed by firms in other states.
 
 Robbery of Andre's Restaurant
 
 39
 The robbery of Andre's Restaurant had a sufficient nexus with interstate commerce to support the conviction of both defendants under 18 U.S.C. § 1951(a). Lucille Estrada, a clerk at Andre's, testified that the perpetrators took money from the cash register. A food supplier for Andre's Restaurant, Joseph Galland, testified that he sold to Andre's various food items that came from other states. The defendants depleted the resources of a business engaged in interstate commerce.
 
 
 40
 The government presented sufficient evidence to establish DeLaCorte's involvement in the robbery of Andre's. DeLaCorte and Ramos both told the police that DeLaCorte participated in the Andre's robbery. Ballistics evidence indicated that the weapon found in DeLaCorte's possession when he was arrested was used in the Andre's robbery. A witness to the Andre's robbery provided a partial license plate number for the suspects' vehicle that was very similar to the license plate number of the car driven by DeLaCorte when he was arrested.
 
 
 41
 The government also presented sufficient evidence to establish Riojas' participation in the Andre's robbery. Although victims and witnesses were unable to identify the robbers, testimony indicated that three men participated in the robbery. Lucille Estrada, who was working as a clerk at Andre's at the time of the robbery, saw two men commit the robbery inside the restaurant. Other witnesses saw a third man waiting in a car outside the restaurant. One witness saw two men run from the restaurant into a moving car, indicating the participation of a third man, the driver.
 
 
 42
 Physical evidence linked Riojas to the robbery. Witnesses testified that they observed a man waiting in a car outside of Andre's holding a sawed-off shotgun. Police found a sawed-off shotgun at Riojas' feet when they arrested him in Brantzeg's carjacked car later the same evening. Witnesses stated that the recovered shotgun was similar to the shotgun they observed at Andre's. Police also recovered a .25 caliber pistol when they arrested Riojas and Ramos in Brantzeg's car. Ballistics tests indicated that .25 caliber shells recovered from Andre's and from Brantzeg's car were fired from this pistol.
 
 
 43
 Paul Ramos' statement to the police, properly admitted as substantive evidence, also implicated Riojas in the robbery of Andre's.
 
 Carjacking of Douglas Toepfer's Truck
 
 44
 The carjacking of Douglas Toepfer's truck had a sufficient nexus with interstate commerce to support DeLaCorte's conviction under 18 U.S.C. § 2119. A carjacking falls within § 2119 if the vehicle involved "has been transported, shipped, or received in interstate or foreign commerce...." 18 U.S.C. § 2119. A single interstate crossing is sufficient, and a recreational purpose for this crossing does not defeat the interstate nexus. United States v. Newton, 65 F.3d 810, 811-812 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 965 (1996). Toepfer testified that he had driven his truck from California to Nevada twice. Both trips were for recreational purposes. On both occasions, Toepfer spent money for gas and lodging in Nevada, and he lost money gambling in Nevada.
 
 
 45
 In a separate opinion filed herewith, the Court rejects DeLaCorte's argument that, because Toepfer remained in his truck during the take over by DeLaCorte, no carjacking occurred.
 
 Carjacking of Tamara Brantzeg's Car
 
 46
 The government presented sufficient evidence to establish DeLaCorte's participation in the carjacking of Tamara Brantzeg's car. After his arrest, DeLaCorte stated to Detective Legg that he "jacked some lady's car at the grocery store on Height Street." The carjacking of Brantzeg's car occurred at Smith's market on Height Street. Brantzeg also testified that the car in which DeLaCorte was arrested "could have been" the same car used in the carjacking of her car.
 
 DeLaCorte's Firearms Convictions
 
 47
 DeLaCorte argues that if this Court reverses any of his convictions for carjacking or interference with interstate commerce, then it must also reverse his convictions for using a firearm in connection with these underlying offenses. Title 18 U.S.C. § 924(c)(1) punishes the use of a firearm only during the commission of a federal "crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(1). The government presented sufficient evidence to support each of DeLaCorte's convictions on the underlying offenses of carjacking and interference with interstate commerce, establishing the predicate "crime[s] of violence" for conviction under § 924(c)(1). There is no basis for reversing any of DeLaCorte's firearms convictions.
 
 VI. Double Jeopardy
 
 48
 The District Court properly denied DeLaCorte's motion to dismiss the firearms charges against him on double jeopardy grounds. Whether a defendant's double jeopardy rights have been violated is a question of law reviewed de novo. United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir.1995).
 
 
 49
 Conviction and punishment of a defendant for both carjacking, 18 U.S.C. § 2119, and use of a firearm during a crime of violence, 18 U.S.C. § 924(c), in connection with the same conduct does not constitute double jeopardy. Newton, 65 F.3d at 811; United States v. Oliver, 60 F.3d 547, 550 (9th Cir.1995); United States v. Martinez, 49 F.3d 1398, 1402 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 749 (1996).
 
 VII. DeLaCorte's Sentence
 A. Cruel and Unusual Punishment
 
 50
 DeLaCorte's sentence of 1,128 months in prison is not unconstitutionally disproportionate punishment. The constitutionality of a sentence is reviewed de novo. United States v. Estrada-Plata, 57 F.3d 757, 762 (9th Cir.1995).
 
 
 51
 The Eighth Amendment prohibition on cruel and unusual punishment includes a narrow proportionality principle that "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); see United States v. Bland, 961 F.2d 123, 129 (9th Cir.), cert. denied, 506 U.S. 858 (1992). Under this proportionality principle, the threshold determination for the court is whether the defendant's sentence is one of the "rare case[s] in which a ... comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Bland, 961 F.2d at 129 (quoting Harmelin, 501 U.S. at 1005). Only if such an inference arises does the court proceed to compare the defendant's sentence with sentences in the same and other jurisdictions. Harmelin, 501 U.S. at 1004-05; Bland, 961 F.2d at 129.
 
 
 52
 The threshold for an "inference of gross disproportionality" is high. See, e.g., Harmelin, 501 U.S. at 1001 (stating that successful proportionality challenges to noncapital sentences would be extremely rare); id. at 1005 (concluding that a mandatory sentence of life imprisonment without possibility of parole for conviction of possession of more than 650 grams of cocaine did not create an inference of disproportionality); Harris v. Wright, 93 F.3d 581, 583-85 (9th Cir.1996) (holding that a mandatory sentence of life imprisonment without possibility of parole was not a disproportionate punishment for a fifteen-year old convicted of murder); Cacoperdo v. Demosthenes, 37 F.3d 504, 507-08 (9th Cir.1994), cert. denied, 115 S.Ct. 1378 (1995) (holding that a sentence rendering defendant ineligible for parole for forty years was not disproportionate to his conviction of ten counts of sexual assault); Bland, 961 F.2d at 125, 129 (finding no disproportionality in a sentence of life imprisonment without possibility of parole for being an armed career criminal under § 924(e), where the underlying conviction was for being a felon in possession of a firearm).
 
 
 53
 DeLaCorte was convicted of participation in three armed carjackings and two armed robberies. In each incident, either DeLaCorte or a codefendant used or displayed a firearm. In each robbery, the firearm was recklessly discharged. DeLaCorte's sentence of 1,128 months in prison does not give rise to an inference of gross disproportionality. No comparative analysis of other sentences is necessary.
 
 B. Vagueness and Ambiguity
 The Indictment
 
 54
 The indictment was not impermissibly vague in its use of both " § 924(c)" and " § 924(c)(1)" to refer to DeLaCorte's firearms charges. An indictment must "sufficiently apprise the defendant of the charges against him in order to enable him to prepare his defense, and to enable him to plead jeopardy against a later prosecution." Woodruff, 50 F.3d at 677 (citing United States v. Cecil, 608 F.2d 1294, 1296 (9th Cir.1979)). DeLaCorte's indictment included the name and section number (924(c)) of the offense charged, followed by a factual description of each incident. The indictment then specified that subsection (1), the only offense contained in § 924(c), was the precise subsection violated.
 
 Title 18 U.S.C. § 924(c)(1)
 
 55
 Title 18 U.S.C. § 924(c)(1) contains no impermissible vagueness and no ambiguity requiring application of the rule of lenity. The interpretation of a statute is a question of law reviewed de novo. Forest Conservation Council v. Rosboro Lumber Co., 50 F.3d 781, 783 (9th Cir.1995).
 
 
 56
 The requirement that all sentences under § 924(c)(1) run consecutively is not ambiguous. Sentences under § 924(c)(1) must run consecutively to all other sentences, whether those other sentences are for violations of § 924(c)(1) or for any other crimes. See Atcheson, 94 F.3d at 1246. The District Court properly ordered that the sentences for all of DeLaCorte's § 924(c)(1) convictions run consecutively to each other and to the sentences for all of his other convictions.
 
 
 57
 Section 924(c)(1)'s imposition of twenty years imprisonment for a "second or subsequent conviction under this subsection" is not ambiguous. "[S]econd or subsequent conviction[s]" under § 924(c)(1) include additional convictions stemming from a single indictment or proceeding. Deal v. United States, 508 U.S. 129, 130-35 (1993); United States v. Andrews, 75 F.3d 552, 558 (9th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 1890 (1996). DeLaCorte was convicted of five violations of § 924(c)(1). The District Court correctly treated DeLaCorte's second through fifth convictions under § 924(c)(1) as "second or subsequent convictions" and imposed for those offenses the twenty year sentences prescribed by the statute.
 
 
 58
 Section 924(c)(1) unambiguously imposes a twenty year sentence for each "second or subsequent conviction." The Supreme Court and the Ninth Circuit have upheld twenty year sentences for each of several § 924(c)(1) convictions beyond the first conviction. See Deal, 508 U.S. at 130-31, 137; Andrews, 75 F.3d at 557-58; United States v. Neal, 976 F.2d 601, 602-03 (9th Cir.1992). The District Court properly sentenced DeLaCorte to twenty years on each of his second through fifth § 924(c)(1) convictions.
 
 
 59
 Because DeLaCorte has not established any impermissible vagueness either in his indictment or in § 924(c)(1), he has not established that his sentence violates Due Process.
 
 
 60
 C. Enhancement of Offense Levels Under the Guidelines
 
 
 61
 The District Court did not err in enhancing the offense levels for two of DeLaCorte's convictions under the United States Sentencing Guidelines ("U.S.S.G."). The legality of a guideline sentence is reviewed de novo. United States v. Manning, 56 F.3d 1188, 1200 (9th Cir.1995). The District Court's interpretation and application of the Sentencing Guidelines are reviewed de novo. United States v. Basinger, 60 F.3d 1400, 1409 (9th Cir.1995). The District Court's factual findings in the sentencing phase are reviewed for clear error. Estrada-Plata, 57 F.3d at 762.
 
 
 62
 The District Court did not err in imposing a one-level increase in the offense level for the carjacking of Jiwan Singh's car under U.S.S.G. § 2B3.1(b)(6). Section 2B3.1(b)(6) provides for a one-level increase in the offense level for a robbery if the property taken is worth more than $10,000 and less than $50,000. The District Court accepted the Presentence Investigation Report's incorporation of the victim's reasonable estimates that the car was worth $9,000 and a ring that was stolen was worth $2,000, for a total of $11,000. DeLaCorte's proffered Blue Book figures assume the most basic vehicle and ignore any options the victim may have had on his vehicle. The District Court's determination of this factual matter was not clearly erroneous.
 
 
 63
 The District Court did not err in imposing a four-level increase in the offense level for the carjacking of Douglas Toepfer's truck pursuant to U.S.S.G. § 2B3.1(b)(4)(A). Section 2B3.1(b)(4)(A) provides for a four level increase in the offense level for a robbery if "any person was abducted to facilitate commission of the offense or to facilitate escape." DeLaCorte forced Toepfer at gunpoint to drive to a different location after Toepfer pointed out a sheriff's car down the street. If DeLaCorte had allowed Toepfer to leave the truck, Toepfer could have reported the incident to the sheriff immediately. By forcing Toepfer to remain in the truck and drive away, DeLaCorte abducted Toepfer to facilitate his escape from arrest.
 
 
 64
 AFFIRMED.
 
 
 
 *
 The Honorable Helen Gillmor, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rule 803(24) provides for the admissibility of:
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that
 (A) the statement is offered as evidence of a material fact;
 (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
 (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
 However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant. Fed.R.Evid. 803(24).