**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

LAWRENCE EUGENE SHAW,
  *Defendant-Appellant*.

No. 13-50136

D.C. No.
2:12-cr-00862-JFW-1

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
November 17, 2014—Pasadena California

Filed March 27, 2015

Before: Mary M. Schroeder, Harry Pregerson,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Schroeder

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for a scheme to defraud a financial institution, in violation of 18 U.S.C. § 1344(1), in a case in which the defendant used PayPal to convince banks that he was a particular bank customer and thus had authority to transfer money out of that customer's bank accounts and into a PayPal account in the defendant's control.

The panel held that for a violation of § 1344(1), the government need not prove that the defendant intended the bank to be the principal financial victim of the fraud, and that the district court therefore correctly refused jury instructions that included such a requirement.

### COUNSEL

Sean Kennedy, Federal Public Defender, Koren L. Bell (argued), Deputy Federal Public Defender, Los Angeles, California, for Defendant-Appellant.

André Birotte, Jr., United States Attorney, Robert E. Dugdale, Assistant United States Attorney, Tracy L. Wilkison (argued), Assistant United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

SCHROEDER, Circuit Judge:

Congress enacted the Bank Fraud Act in 1984, and ever since, the federal courts have grappled with whether its provisions require proof of an intent to cause harm to the bank itself. The Act contains two clauses: the first criminalizes schemes "to defraud a financial institution," and the second schemes to obtain bank assets or property under its control "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. Last year, the Supreme Court held that the second clause does not require proof that the defendant intended to defraud the bank. *Loughrin v. United States*, 134 S. Ct. 2384, 2387 (2014). In this case, we deal with the first clause, which by its terms does require such proof. The question here is whether that means the government must prove the defendant intended the bank to be the principal financial victim of the fraud.

The principal intended victim in this case, at least according to the defendant, was a bank customer, Stanley Hsu. The defendant, Lawrence Shaw, had access to the victim's bank statements. The gist of Shaw's scheme was to use PayPal, an online payment and money transfer service, to convince the banks that he was Hsu and thus had authority to transfer money out of Hsu's bank accounts and into the PayPal account in Shaw's control.

The government charged Shaw with violating § 1344(1). Shaw sought a jury instruction that, under § 1344(1), the government had to prove not only that he intended to deceive the bank, but that he also intended to target the bank as the principal financial victim of the fraud, rather than the account

holder or PayPal. The district court refused to give such an instruction, concluding that clause 1 required proof only that the defendant intended to deceive the bank, not that he also intended the bank to bear the loss.

While the circuits are divided as to the requirements of § 1344(1), our Ninth Circuit case law answers Shaw's argument. We have held that, to the extent § 1344(1) requires any intent to expose the bank to a risk of loss, the requirement is easily satisfied by the bank's having to bear some potential administrative expenses that necessarily result from being defrauded. *See United States v. Wolfswinkel*, 44 F.3d 782, 786 (9th Cir. 1995). We did not hold that the bank needed to be the intended financial victim of the fraud. In this case, a principal intended financial victim of the fraud was the bank customer who held the account, and our law has dealt with that specific situation. We have held that the statute is violated where the bank is the target of the deception, even if bank customers were the intended financial victims of the fraud. *See United States v. Bonallo*, 858 F.2d 1427, 1429–30, 1430 n.2 (9th Cir. 1988).

These cases help define the meaning in this circuit of § 1344(1)'s element of intent "to defraud," and establish that it does not include intent to financially victimize the bank. That result is fully consistent with the Supreme Court's decision in *Loughrin*, and indeed complements *Loughrin*'s holding that § 1344(2) of the statute does not require any intent to defraud the bank. Section 1344(1) does require intent to defraud the bank, but neither clause requires the bank to be the intended financial victim of the fraud. We therefore affirm the conviction.

**BACKGROUND**

The charges in this case arose from a scheme defendant Shaw devised to take money from bank accounts belonging to Stanley Hsu, a Taiwanese businessman. Hsu opened a Bank of America account while working in the United States. When he returned to Taiwan, he arranged for the daughter of one of his employees to receive his mail in the States and forward it to him in Taiwan. Shaw was living with the daughter and routinely checked her mail. When Hsu's Bank of America statements began to arrive, Shaw opened them and learned Hsu's account and personal information.

Shaw used the information from Hsu's statements to execute the following scheme: he opened an email account in Hsu's name, then used this email account and Hsu's personal information to open a PayPal account. Shaw "linked" the PayPal account to Hsu's account with Bank of America. He was able to circumvent PayPal's security measures because of his access to the information in Hsu's bank statements.

On June 4, 2007, Shaw opened two accounts with Washington Mutual under the name of his father, Richard Shaw, without his father's knowledge or permission. One account was a savings account ("Tier 1" account), which Shaw linked to the fake Hsu PayPal account. During the process of linking the Tier 1 account with the Hsu PayPal account, PayPal identified the request as suspicious. PayPal sent an email to the fake Hsu email account asking for additional information. In response, Shaw faxed PayPal a copy of Hsu's Bank of America account statement, and a bank statement he had altered to appear as if Hsu owned the Richard Shaw accounts. He also sent a copy of Hsu's driver's license, which he had altered to have a younger birth

date. On the basis of these falsified documents, Washington Mutual and PayPal allowed the savings account in the name of Shaw's father and the PayPal account in Hsu's name to be linked.

The second account Shaw opened in his father's name was a checking account ("Tier 2" account). This account was linked to the Tier 1 savings account. Shaw's scheme ultimately siphoned the funds into a third Washington Mutual account, a joint account which Shaw had previously opened in his and the daughter's name, although without her knowledge.

Once the accounts were set up and linked, Shaw began to withdraw money from Hsu's Bank of America account through a series of online transfers and checks written to himself. He would transfer money from the Hsu Bank of America account first to the Hsu PayPal account, then transfer it from the Hsu PayPal account to the Tier 1 savings account with Washington Mutual. Then, Shaw would transfer money from the Tier 1 account to the Tier 2 checking account, which allowed him to write checks to himself, signing his father's name. Finally, he would deposit those checks into the Washington Mutual joint account that he controlled.

Using this scheme, Shaw was able to convince the banks to transfer and release approximately $307,000 of Hsu's money to Shaw between June and October 2007. Hsu's son discovered the missing money in October 2007, reported the fraud and closed the Bank of America account.

Bank of America returned approximately $131,000 to Hsu, covering the fraudulent activity that occurred within 60

days of the reported fraud. PayPal reimbursed Bank of America for this amount. In the end, PayPal bore approximately $106,000 of the loss and Hsu over $170,000, because Hsu did not notify the banks of the losses within 60 days of many of the fraudulent transactions, as the parties all agree was required by standard banking practice.

## DISTRICT COURT PROCEEDINGS

The government charged Shaw with 17 counts of bank fraud in violation of § 1344(1) and in December 2012 the case went to trial before a jury. The defense theory was that a bank fraud conviction under § 1344(1) requires fraudulent intent to expose the bank itself to monetary loss, and Shaw intended only to expose PayPal and Stanley Hsu to any monetary loss. Shaw argued that "intent to defraud" means intent to deceive and cheat the bank. Shaw therefore asked for jury instructions which would require the government to prove that Shaw had intended the bank to be not only the target of the deception, but to suffer an actual loss or risk of loss as the financial victim of the fraud. His requested instructions provided:

> (1) The defendant knowingly carried out a scheme to defraud [the bank]; that is a scheme designed to victimize [the bank] by causing [the bank], not only Stanley Hsu, monetary loss;

> (2) The defendant actively deceived [the bank] as to a material fact; that is, a fact that had a natural tendency to influence, or was capable of influencing, [the bank] to part with money or property;

(3) The defendant acted with the specific intent to defraud [the bank]; that is, with the intent to deceive and cheat [the bank] in order to expose [the bank], not only Stanley Hsu, to monetary loss.

(4) [The bank] was federally insured by the FDIC.

It is not enough for the government to prove that Mr. Shaw carried out a scheme to obtain Mr. Hsu's money by deceiving [the bank]. In order to convict Mr. Shaw, you must find that [the bank] itself was both the target of his deception and an intended victim of the fraud.

The district court declined to give Shaw's requested jury instructions. The district court concluded that risk of loss was an element that the bank fraud statute did not require, and that the bank need not be an intended financial victim of the fraud. Instead, the trial judge gave instructions based on a combination of model jury instructions and instructions used in previous bank fraud cases in the Ninth Circuit. The judge instructed the jury that:

[i]n order for the defendant to be found guilty of bank fraud, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knowingly executed a scheme to defraud a financial institution as to a material matter;

Second, the defendant did so with the intent to defraud the financial institution; and

Third, the financial institution was insured by the Federal Deposit Insurance Corporation.

. . . .

The phrase "scheme to defraud" means any deliberate plan of action or course of conduct by which someone intends to deceive, cheat, or deprive a financial institution of something of value. It is not necessary for the government to prove that a financial institution was the only or sole victim of the scheme to defraud. It is also not necessary for the government to prove that the defendant was actually successful in defrauding any financial institution. Finally, it is not necessary for the government to prove that any financial institution lost any money or property as a result of the scheme to defraud.

. . . .

An intent to defraud is an intent to deceive or cheat.

The jury convicted Shaw of 14 counts of bank fraud on December 13, 2012, and this appeal followed.

## DISCUSSION

The bank fraud statute, 18 U.S.C. § 1344, provides:

> Whoever knowingly executes, or attempts to execute a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

In *Loughrin v. United States*, the Supreme Court construed the second clause, and held that it does not require the government to prove that the defendant intended to defraud the bank. 134 S. Ct. 2384, 2387 (2014). Section 1344(2) targets schemes to obtain property held by the bank via misrepresentation to a third party, while § 1344(1) penalizes schemes to defraud the bank itself. *See id.* at 2389–92. The Supreme Court effectively required courts to treat the two clauses separately, holding that while they overlap substantially, the clauses are disjunctive and establish distinct offenses. *Id.* at 2390, 2390 n.4.

In holding that the two clauses create separate offenses, the Court rejected the reasoning of the Third Circuit. *See id.* at 2388–89. The Third Circuit held that clauses 1 and 2

conjunctively create only one offense, and thus all violations of the statute require both the intent to defraud the bank and that the bank be exposed to a risk of loss under the relevant law. *United States v. Thomas*, 315 F.3d 190, 199–201 (3d Cir. 2002) (holding that under both clauses, "a defendant must intend to cause a bank a loss or potential liability, whether by way of statutory law, common law, or business practice" (internal quotation marks omitted)). The Supreme Court expressly held that § 1344(2) does not require either intent to defraud a bank or a risk of loss to a bank. *Loughrin*, 134 S. Ct. at 2389–90, 2395 n.9. In doing so, it emphasized that intent to defraud a bank is the essence of § 1344(1). *Id.* at 2389–90.

Shaw's argument in this case therefore focuses on the difference between the two clauses. He points out that the second clause covers schemes intended to obtain a third party's property. He argues that the first clause, under which he was convicted, therefore must require that a defendant intend to obtain the bank's property. Thus, he asks us to conclude that a conviction under § 1344(1) requires a showing that the defendant intended to expose the bank to the principal risk of loss. Such a requirement was not satisfied since, in this case, Shaw intended his principal target to have been the bank's customer, Hsu.

Shaw thus seeks to characterize the difference between the two clauses as involving the intended financial victim of the fraud, i.e., the intended bearer of the loss. The language of neither clause of the statute, however, refers to monetary loss or to the risk of such loss. The statutory language focuses on the intended victim of the deception, not the intended bearer of the loss. Section 1344(1) requires the intent to deceive the bank. Section 1344(2) requires false or

fraudulent representations or pretenses to third parties. The Supreme Court made this point in *Loughrin* when it noted that the second clause was intended to broaden the scope of bank fraud to include schemes that did not involve deception of the bank directly, such as schemes to use stolen credit cards. *See* 134 S. Ct. at 2391–92. Section 1344(1) thus covers schemes to deceive the bank directly. Neither clause requires the government to establish the defendant intended the bank to suffer a financial loss.

Analysis of our circuit's law before *Loughrin* counsels the same result. In *United States v. Bonallo*, 858 F.2d 1427 (9th Cir. 1988), we recognized that under § 1344(1) the bank itself need not be the sole or primary victim of the scheme. Rather, the bank is defrauded within the meaning of § 1344(1) when it is the target of the deceit, even if the scheme targeted the bank's customer accounts as the source of the money. *See id.* at 1434 n.9.

In *Bonallo*, a bank employee withdrew funds from his own account via the ATM, then manipulated the bank's computer system to charge the withdrawals against other customers' accounts. *Id.* at 1429–30. The defendant argued that the other customers were the intended victims of his scheme and therefore the bank was not defrauded within the meaning of the statute. We rejected this argument, finding that the bank was the target of his misrepresentation, even if the customers' accounts were the source of the funds. *See id.* at 1434 n.9. In short, the defendant was guilty of bank fraud because he intended to deceive the bank.

In *United States v. Wolfswinkel*, 44 F.3d 782 (9th Cir. 1995), we considered whether a risk of financial loss to a bank was as an element of § 1344(1). We held that even if

there were such a requirement of financial loss to the bank, it was easily satisfied. The defendant was convicted of bank fraud under § 1344(1) after he engaged in a check-kiting scheme, during which he convinced a bank officer to sell him cashier's checks paid for with insufficiently-backed checks. *Id.* at 784. On appeal, Wolfswinkel argued that the government had to show he exposed the bank to a risk of loss under § 1344(1), and he had not, because he provided collateral to the bank to secure any losses for the bounced checks. *Id.* at 785–86.

In affirming Wolfswinkel's conviction, we recognized a circuit split as to whether § 1344(1) requires proof of risk of loss to the bank to establish the defendant's intent to defraud. *Id.* at 786. We held, however, that even assuming there were such a requirement, Wolfswinkel's scheme satisfied it. *See id.* Although he had provided security for potential losses, Wolfswinkel exposed the bank to a risk of loss in the form of administrative costs and the threat of competing creditor claims if it were forced to liquidate the collateral. *Id.* The defendant need not have intended the bank to bear the risk of losing the amount involved in the financial scheme itself.

The Supreme Court's decision in *Loughrin* does not affect the validity of our precedent, or undermine it in any way. If anything, it lends credence to our reluctance to impose any risk of loss requirement in a prosecution under the bank fraud statute. *Loughrin* confirms our conclusion that the difference between the two clauses is which entity the defendant intended to deceive, not which entity the defendant intended to bear the financial loss. *See* 134 S. Ct. at 2389–90 (emphasizing that nothing in § 1344(2) requires specific intent to deceive a bank, which § 1344(1) already covers).

Shaw stresses that under the applicable law, the bank, in the end, did not actually lose anything. The losses ultimately fell on Hsu for failing to spot much of the fraud within the legally required 60 days, and on PayPal, which had to reimburse the bank for the rest. Shaw therefore asks us to conclude that he could not have intended to defraud the bank. A similar argument with respect to clause 2 was dismissed summarily in *Loughrin* on the ground that the federal statute was intended to avoid having cases turn on the technical ramifications of banking law. *Id.* at 2395 n.9. In characterizing § 1344(2), the Court said that the language "appears calculated to avoid entangling courts in technical issues of banking law about whether the financial institution or, alternatively, a depositor would suffer the loss from a successful fraud." *Id.* We conclude that the same legislative intent must be ascribed to § 1344(1). There is no reason to believe Congress wanted courts to become more entangled in such technical issues under the first clause than under the second clause.

We recognize that some circuits have held that risk of financial loss to the bank is an element that must be proven under § 1344(1). *See, e.g.*, *United States v. Staples*, 435 F.3d 860, 866–67 (8th Cir. 2006) (discussing difference of opinion among circuits on whether intent to harm or cause the bank a risk of loss is required). The reason given is that the purpose of the statute is protection of the federal fisc, and that purpose is not served if the bank faces no financial risk. *See, e.g.*, *Thomas*, 315 F.3d at 201. Circuits adopting the requirement cite to the legislative history of the bank fraud statute, which shows that Congress enacted it because of the "strong federal interest in protecting the financial integrity of [federally insured financial] institutions." *See, e.g.*, *id.* (quoting S. Rep. No. 98-225, at 377 (1984), *reprinted in* 1984

U.S.C.C.A.N. 3182, 3517.); *United States v. Nkansah*, 699 F.3d 743, 759 (2d Cir. 2012) (same). But requiring proof of intent that a bank bear a risk of loss does not serve this end. The entity that bears the risk of loss does not necessarily depend upon the entity (i.e., the federally insured financial institution) that the defendant intends to harm. It depends on the operation of banking laws that, as this case demonstrates, may result in having the instruments of the fraud, like the bank's customers or entities like PayPal, ultimately bear the loss. A scheme that is intended to harm third parties may, in fact, end up hurting the bank, and vice versa. Few criminals have any knowledge of the rules of law that govern which entity bears the risk of loss. Requiring intent to harm the bank only makes it more difficult to prosecute bank fraud. *Nkansah*, 699 F.3d at 759 (Lynch, J., concurring); *see also Loughrin*, 134 S. Ct. at 2395 n.9 (citing *Nkansah* concurrence with approval).

The Court in *Loughrin* held that § 1344(2) does not require intent to defraud a bank because the plain language of that section includes no such requirement. 134 S. Ct. at 2389–2390. We similarly decline to read an additional element into § 1344(1) that Congress did not include; that does not serve the Congressional purpose; and that could needlessly entangle judges and juries in the intricacies of banking law. The district court correctly refused instructions that included such a requirement.

**AFFIRMED**.